No. 34,256

GIDEON P. CHAPMAN, BENJAMIN H. CHAPMAN, JOHN CHAPMAN, JOE CHAPMAN, MAMIE CHAPMAN, LEOTA WHITNEY, EMMA SEWARD, RUBY PRICE, ETHEL RHODES, MARY SMITH, LEON H. SMITH and J. C. KIPPES, *Appellants*, v. THE CONTINENTAL OIL COMPANY, and THE JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, *Appellees*.

(89 P. 2d 833)

Opinion filed May 6, 1939.

*W. R. Griffin,* of Ellis, *Douglas Hudson,* of Fort Scott, *John Madden, John Madden, Jr.,* and *Howard C. Kline,* all of Wichita, for the appellants.

*Henry F. Herrman,* of Hays, *B. F. Tracy,* of Emporia, and *William H. Zwick,* of Ponca City, Okla., for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action for a declaratory judgment to determine the rights of the respective parties in a certain mineral lease. It was tried in the court below upon the pleadings and stipulated facts. The trial court found the lease had been abandoned, and rendered judgment for defendants. Plaintiffs have appealed.

On December 10, 1896, William Kysar and his wife, then the owners of a certain quarter section of land in Ellis county, executed to Theodore Stegner and B. H. Chapman, of Kansas City, Mo., a written agreement of lease "for the purpose of prospecting for and mining coal, ore and other valuable deposits" from the described quarter section, and granting unto them "the exclusive right to dig, mine and excavate coal, ore and other valuable deposits upon said land, and to extract and remove the same from said land, with the right of ingress and egress; to construct buildings, machinery, railroads, sidetracks and other improvements necessary in and about the

carrying on of said business." The instrument provided no term of years for it to run; neither did it provide any specific time when operations under the lease should commence, nor for the payment of any sum annually, or at other times, for delay in the beginning of operations under it. The second parties agreed to pay first parties a royalty of three percent of the cash sales of all coal, ore, or other valuable deposits mined or raised on the land, the royalty to be due and payable on the first day of each month, from coal, ore, or other valuable deposits sold the preceding month. They also agreed to keep books of their operations and sales, which should be open to the inspection of the first parties. It further provided that improvements made on the land by second parties should be regarded as personal property and should not become a part of the realty, as fixtures or otherwise, and that the first parties should have possession and use of the premises not inconsistent with the necessary possession and use of the second parties, and that the provisions of the instrument should be binding upon the heirs, administrators and assigns of the respective parties to the same extent as to the parties themselves.

Theodore Stegner assigned his interest in the lease to B. H. Chapman, June 1, 1897. The lease was filed for record in the office of the register of deeds of Ellis county on June 24, 1899. It was stipulated in this case that the rights therein granted "of prospecting for and mining coal, ore and other valuable deposits" should be deemed to include the right to mine oil or gas.

No attempt has ever been made to dig, mine, or excavate coal, ore, or other valuable deposits from the land described in this lease by Stegner, Chapman, or anyone acting through or under them. Chapman died intestate in October, 1903, and his estate was administered upon in Jackson county, Missouri, and was fully and finally closed in December, 1905.

By June 10, 1936, the defendant, John Hancock Mutual Life Insurance Company, had become the owner of the real property described in the lease above mentioned, through a mortgage-foreclosure proceedings, in which none of the plaintiffs in this action, nor any of their predecessors in title or interest, had been made parties defendant. On the date last named the John Hancock Mutual Life Insurance Company executed an oil and gas lease to one Fred Nixon, who assigned it to G. T. Fields, who assigned it to the defendant the Continental Oil Company. The Continental Oil Company paid a

bonus of $288 for the lease of 1936 and has paid annual rentals on the lease in the sum of $320, but has not undertaken any prospecting or development of the lease. On February 25, 1938, the John Hancock Mutual Life Insurance Company conveyed the land by general warranty deed to J. H. Gasaway, retaining, however, a specified interest in all oil, gas, or other minerals in and under the property, and took from Gasaway and wife a mortgage for a part of the purchase price.

The plaintiffs in this action are the heirs at law of B. H. Chapman. None of them had any actual knowledge of the existence of the lease of 1896 under which they claim until about January, 1938. In their petition in the court below plaintiffs contended that the lease from Kysar and wife to Stegner and Chapman, executed in 1896, is in all respects valid, and, that by virtue of it, and as heirs of Chapman, they have the exclusive right to go upon the premises and explore for and produce coal, ore, and other minerals, including oil or gas, which may be found on or within the property, and that since that lease was filed for record defendants had constructive notice of it and are bound by its terms. Defendants contended the lease of 1896 had been abandoned by the lessee and therefore was of no force and effect, hence that their rights and interests, as above stated, are superior to those claimed by plaintiffs, and by cross petition they allege that the claim of plaintiffs constitutes a cloud upon their title and interest, which they asked to have canceled.

The sole question presented for review here is whether there is evidence in the record sufficient to sustain the finding of the trial court that the lease of 1896 had been abandoned.

Abandonment as here used is the voluntary or intentional release of a known right. It is applicable to mining claims and rights appurtenant thereto. (1 C. J. 10, and cases there cited.) The element of intention to abandon enters into it. Appellants contend that element is lacking here. It is true that none of the plaintiffs, nor anyone through whom they claim under the lease, testified that he intended to abandon the lease, but such specific testimony is not essential. An intention to abandon may be inferred from the conduct of the owner and the nature and situation of the property. (1 Am. Jur., p. 9.) This lease contains internal evidence that the parties, particularly the lessors, contemplated that the lessees would do exploring and mining work on the leased premises within a reasonable time. It provides for the keeping of books of such activities and

payments to be made to the lessors each month, and it contains no provision authorizing the delay of operations upon the payment of a sum periodically. Leases of this character carry within them the implied covenants of reasonably prompt operations. In *Mills v. Hartz,* 77 Kan. 218, 94 Pac. 142, a lease for mining oil, gas, or coal was involved. The failure to begin work for seven and one-half years was held to evidence an intention to abandon it. Here the time was more than forty years. Others of our cases dealing with the question of abandonment of leases of this character are: *Rawlings v. Armel,* 70 Kan. 778, 79 Pac. 683; *Howerton v. Gas Co.,* 81 Kan. 553, and cases cited, p. 564, 106 Pac. 47; *Cole v. Butler,* 103 Kan. 419, 173 Pac. 978; *Luman v. Davis,* 108 Kan. 801, 198 Pac. 1078; *Nigh v. Haas,* 139 Kan. 307, 31 P. 2d 28.

Many authorities are cited in the opinions in the cases above noted. We think the nature of this lease, its provisions, and the implied covenants common to such leases, and the long period within which no work was done under it, justified the trial court in finding that the lease had been abandoned.

The judgment of the court below is affirmed.