KANNER, Judge.
Deerfield Rock Corp., the defendant, appeals from the final decree of the chancellor cancelling its lease of certain lands from Novice R. McClellan, the plaintiff, and her now deceased husband. The lease was executed on November 8, 1954, to cover a term of fifteen years, with an option for renewal for an additional five year period. Portions of the lease which, primarily, are concerned here are contained within the clauses numbered 3, 4, 5, 14, and 15.[1] It was provided in the lease that defendant had the exclusive right to mine rock from the lands and also that payment to plaintiff for rock would be made at specified rates per cubic yard. The lease does not require the defendant to pay any minimum rent or royalty, but royalties are required to be paid only for materials actually removed from the property. For plaintiff to receive any income, this must be through the result of mining operations. The lease is wholly silent as to the commencement date of such operations.
The complaint of the plaintiff thus is that failure to begin mining operations deprives her of the real consideration contemplated by the lease of royalty payments for rock mined.
*824 The defendant has advanced certain excuses for having failed to begin rock mining operations. One was the asserted delay caused by construction of the Florida State Turnpike, upon the west side of which lies the plaintiff’s lands, while defendant’s equipment was located on the east side. Others were that torrential rains, together with the constructing of an access road built under the turnpike for defendant’s use, made mining difficult; and further that the principal inducement to plaintiff and her now deceased husband for the making of the lease was drainage of their farm lands onto lands controlled by the defendant, which had constructed ditches for that purpose.
After the hearing, during which 'extensive testimony was taken, the court found upon the basis of the testimony and the language of the lease that the real consideration for its execution was payment of royalties by the defendant to the plaintiff for mining and removing rock. In so adjudicating, the court held that, in a mining lease which has no commencement date, there is an implied agreement that the lessee will begin operations within a reasonable time. The excuses given by the rock company for the delays were considered by the court as valid, but the court ruled that those conditions inhibiting mining operations were not of a duration sufficient to excuse the defendant for complete failure over a period of approximately three and one-half years to begin mining. As to these excuses specifically, the court found that the turnpike had been completed and opened for traffic on January 26, 1957, that the access road beneath it, constructed as a private road solely for defendant’s use in operating heavy equipment, had been completed in late February or early March of 1957, and that this access road, after that, was usable by the defendant at all times. It was also determined by the court that, although the level of the access road bed was raised between May and July, 1958, to an elevation of fifteen feet, this was done to meet requirements of the Turnpike Au-
thority in an agreement with Butler Farms and not because of flooded conditions nor for the purpose of making it usable for heavy hauling as contended by the defendant. It was thus concluded by the court that the defendant could have begun mining operations after completion of the access road in February or March of 195/7 and that defendant’s reasons to justify its total failure to commence mining yielded no valid excuse. In this connection, the court pointed out that one of defendant’s own[1] witnesses testified that the usual time necessary as preliminary preparation for mining raw land was three to six months.
The primary question is whether or not,, under the factors related, the defendant is excused from beginning the rock mining operations during the period of time from November 8, 1954, the date of the lease agreement, to August 13, 1958, the date of the institution of the suit, or a period of nearly four years
In cancelling the lease, the court did so under the principle that where the consideration for the lease is the agreement to pay royalties on the product mined, in the absence of an express provision designating the time for commencing and performing mining operations, there arises an implied covenant to begin the mining operations within a reasonable period of time and to develop and work the mine in a proper manner and with reasonable diligence. See 58 C.J.S. Mines and Minerals § 183a, p. 389; 36 Am.Jur., Mines and Minerals, § 59, pp. 320-321; and Annotation 60 A.L.R. 901.
Applying a phase of this general rule, the Florida Supreme Court in the case of Hiller v. Walter Ray & Co., 1912, 59 Fla. 285, 52 So. 623, involving a lease for mining phosphate rock, held that by necessary implication and intendment there fell upon the lessees the obligation to make due and reasonable effort to find upon or in the land rock of the quantity and quality specified in the lease. As to timber and turpentine deeds or leases, the Supreme Court *825 has held that a reasonable time will be allowed for a lessee’s enjoyment where the instrument is silent as to time in which lands conveyed must be used. See Wilson Cypress Co. v. Stevens, 1932, 106 Fla. 717, 143 So. 661; and McNair & Wade Land Co. v. Parker, 1912, 64 Fla. 371, 59 So. 959. Of closer similarity in principle to the present case is that of Dowling Park Naval Stores Co. v. Houck, 1912, 64 Fla. 242, 59 So. 962, concerning a turpentine lease can-celled by the trial court for failure of the lessee to enter and box the timber within •a reasonable time.
Also illustrative of the general rule are several cases of other jurisdictions which we shall now mention. It was held in Eastern Kentucky Mineral & T. Co. v. Swann-Day L. Co., 1912, 148 Ky. 82, 146 S.W. 438, 46 L.R.A.,N.S., 672, dealing with a mining and timber deed, that where payment of royalties constitutes the consideration for the contract, the grantor has a continuing interest and there is an implied condition imposed upon the grantees, under pain of forfeiture, to begin operations within a reasonable time. Also exemplifying the principle that mining leases containing provisions for payment of royalties impose upon the lessee the duty to develop the leased premises with due diligence and within a reasonable length of time are the cases of Cawood v. Hall Land & Mining Co., 1943, 293 Ky. 23, 168 S.W.2d 366; and Mansfield Gas Co. v. Alexander, 1911, 97 Ark. 167, 133 S.W. 837.
In summary of the material provisions of the lease here considered, we see that it was agreed that the lessors could inspect sales records of the lessee to verify royalty payments, that the lessee would excavate rock and sand in keeping with good mining practices usual in such endeavors, would make monthly reports to the lessors of all rock and other products sold from the premises, and would make monthly payments of royalty sums due for each preceding month. There was a clause providing that the lessor could terminate the lease upon thirty days’ default. It was provided that there should be no minimum payment but that the lessee would have to pay only for such rock as was actually removed from the premises. Obligation was imposed on the lessee to inform the lessors not later than September 1 of each year concerning the particular portion of the lands it desired to mine so that the lessors or their tenants could farm the remaining portions of the land. These provisions of the lease would alone lead to the conclusion that the parties contemplated that the lessee would make reasonable effort to mine the rock as specified in the lease.
An instance where a lease provided that the lessee keep books with respect to the mining activities and make monthly payments to the lessors, as is true of the present lease, is demonstrated by the case of Chapman v. Continental Oil Co., 1939, 149 Kan. 822, 89 P.2d 833. This was a declaratory action wherein the court indicated such provision to be internal evidence that the parties contemplated the lessees would explore and mine within a reasonable time.
From our study of the instant case, it appears that the portion of the evidence showing that water was pumped from plaintiff’s lands onto those of the defendant also reveals that this was of an inconsequential amount and clearly did not constitute the real consideration contemplated by the lease. Further, not only could the access road have been used after its initial completion in February or March of 1957 to the time of the bringing of the present suit August 13, 1958, but also during a period of time prior to the turnpike’s construction. The lease was executed on November 8, 1954, at which time the defendant was then mining lands adjoining those of the plaintiff. Although the turnpike was constructed along a section line between this adjoining land and that of the plaintiff, the grading and drainage contract for that particular section of the turnpike was not executed until October 12, 1955, and the first work order was not issued until January 30, 1956. During that time, a period of *826 over a year, the equipment of the defendant, unimpeded by turnpike construction, was at times located within fifty feet of plaintiff’s lands; and mining operations there could have been initiated with dispatch and convenience, especially taking into consideration the three to six months preparatory period testified to on behalf of the defendant.
At this point we observe that some of the cases referred to are quite old and were decided when facilities and equipment used in the enterprises were not as efficient as that in use in present day operations. Here the defendant was equipped with improved modern heavy machinery and other equipment to expeditiously carry on the mining operations.
As to what should be considered a reasonable time where no time is designated in the lease, a reading of the cases necessarily shows different periods of time in which it has been determined mining operations should begin. This is to be expected because of the type, conditions, considerations, and magnitude or extent of the different undertakings and the varying provisions incorporated in the respective lease agreements.
To demonstrate a case showing a period of time comparative to the one before this court, there is the Kentucky case of Killebrew v. Murray, 1912, 151 Ky. 345, 151 S. W. 662, 663, concerning a lease for phosphate mining rights to 155 acres of land valued at $23,000 which provided for a consideration of one dollar and “the covenants hereinafter contained” on the part of the lessees, and further provided that the lease was for a period of ten years from date and so long after that as phosphate might be found in paying quantities. The lease was silent as to the time of beginning operations. The circumstances attending the execution indicated that the lessees, appellants in that case, had fixed a year or eighteen months as a reasonable time in which to begin. The court held that, after appellees waited three and a half years for the appellants to begin operations, and the appellants having failed to do so, the ap-pellees rightly treated the inaction of appellants as abandonment.
In the case before us, the real consideration for the lease is totally dependent upon the commencement and continuance of mining operations by the lessee. In the final analysis, normally the parties to a lease enter into it, each because of an anticipated advantage for himself. In this instance, the expected advantage to the lessee was the exclusive right to mine rock from the land for lessee’s own profit for the initial period of fifteen years, while the anticipated advantage to the lessor was the financial returns to be gained from the lessee’s activation of the mining project. Here, the lessee has been possessed of its exclusive mining right; it has not, however, granted to the lessor her privilege of reaping financial benefit by starting to mine the land. There is no minimum rent, nor has there derived from the instrument to the credit of the lessor any modicum of income for a period of nearly four years, because of the lessee’s inactivity as to mining of the land. There would have been no inducement to the lessor to tie up the lands for such a large number of years under a sterile or dormant lease. We hold that, under the circumstances of this case, the lapse of time during which the lessee failed to commence the mining operations constituted unreasonable delay. Failure of the lessee to begin within a reasonable time the operations contemplated by the lease so as to produce income as anticipated by its provisions subjected that lease to cancellation.
We are convinced that the chancellor’s, decision is correct and sound and that there is no basis for reversal.
Affirmed.
ALLEN, C. J., and SHANNON, J., concur.

. “3. The Lessors, or their appointed representative, shall be permitted at all reasonable times to inspect the sales records of the Lessee, to verify sales for purposes of royalty payments hereinabove provided for.
“4. The Lessee shall have the right to •dig and remove rock from any and all of the said lands, to excavate to any depth desired, and shall have the right of ingress and egress to and over the said lands, and all connecting roads thereto, and right-of-way rights over the leased lands for its own use. The lessee agrees to excavate rock and sand to a depth in keeping with good mining practices that are usual for excavating such rock and sand.
“5. The Lessee shall, on or before the fifteenth (15th) day of each calendar month hereafter, make a report to the Lessors of the total amount of rock and other products sold from the premises during the preceding calendar month, and shall, not later than the said fifteenth (15th) of each month, pay to the Lessors the sums due for the preceding month under the terms of this Lease; provided, however, that such time of payment may be extended by mutual consent of the parties hereto. Should any of the covenants hereby agreed to be performed be broken or not performed by the Lessee, and should such default continue for a period of more than thirty (30) days, then at the option of the Lessors, upon written notification to the Lessee this Lease Agreement may be terminated and declared null and void, with the right of the Lessors to recover from the Lessee all sums due under this Lease Agreement, by legal action or otherwise. However, this Lease shall expire when the Lessee has dug all the usable rock on the described property. * * *
“14. It is agreed by the parties that under the terms of this Lease Agreement there shall be no minimum or annual payment required, but that the Lessee shall pay only for such rock as it actually removes from the premises. In consideration of this proviso, it is agreed by the Lessee that the Lessors shall be permitted to farm the leased premises until such time as the Lessee requires it for mining rock. Provided, however, that not later than September 1st of each year the Lessors will ascertain from the Lessee what part, if any, of the leased premises the Lessee desires to mine or dig during the ensuing farming season, and upon the same being ascertained by the Lessors, the Lessee agrees that it will not disturb any crops or farming operation during the ensuing farming season carried on by the Lessors upon the lands not desired to be mined by the Lessee.
“15. The Lessee agrees that the Lessors shall be entitled to drain water off of the leased premises onto other lands that are owned or controlled by the Lessee so as to relieve the leased premises of any excessive water conditions. However, it being provided that if it is necessary for pumps to be used in order to remove the water from the leased premises to other lands that are owned and controlled by the Lessee so as to satisfy the Lessors desires, the Lessors shall furnish such pumps at their own expense.”