IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-50632
_____


JACK D. STIRMAN;
BETH BLAKEMORE HUNTER,

                                        Plaintiffs - Appellees,

                        versus

EXXON CORPORATION, ET AL.,

                                                Defendant,

EXXON CORPORATION,

                                        Defendant - Appellant.

_____

        Appeal from the United States District Court
            for the Western District of Texas
_____

                    February 1, 2002

Before JOLLY, SMITH, and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

        The plaintiffs in this class action case, John Stirman and
Beth Blakemore Hunter, allege that defendant Exxon Corporation
breached its lease obligations to them and to a class of similarly
situated individuals by violating an implied covenant to market the
natural gas and natural gas liquids (collectively, "natural gas")
that were the subject of the leases.  Exxon allegedly did so by

1

transferring the natural gas within its own divisions at a lower price than the price realized in third party sales, causing the royalty owners to receive lower royalty payments. The plaintiffs moved for class certification and the district court twice denied their motions, but in its second order called for an evidentiary hearing on the matter. After the hearing, the district court certified a class consisting of:

> (1) All private persons and private entities who own or owned royalty interests under leases located in the continental United States,
> (2) where Exxon Corporation is the lessee,
> (3) the leases provide for payment of royalties on natural gas production on an amount realized/net proceeds basis or a market value/market price basis, and
> (4) from which Exxon Corporation has produced natural gas (including natural gas liquids) that was directly or indirectly sold or transferred to Exxon Corporation or within Exxon Corporation,
> (5) during the time period July 14, 1995 through the present (the "Class").

Exxon filed a Petition for Permission to Appeal, which we granted. We hold that the district court failed adequately to examine whether the plaintiffs met all the requirements for class certification under Federal Rule of Civil Procedure 23 ("Rule 23"). We REVERSE the certification order and REMAND for further proceedings not inconsistent with this opinion.

I

Plaintiffs Stirman and Hunter are residents of Colorado. Stirman is apparently not a member of the class, although his name

2

is still on the caption of this case.[1]  Hunter is a royalty interest owner under a natural gas leasehold owned and/or operated by Exxon.  This suit was filed on July 14, 1999.  The suit was brought under diversity jurisdiction, and alleged breach of contract and unjust enrichment, and sought an accounting.  The plaintiffs allege that Exxon breached an implied covenant to market diligently the natural gas that is the subject of their leaseholds and to obtain the highest price reasonably possible.  Exxon allegedly did so by transferring the gas purchased from the plaintiffs within Exxon at lower prices than those it received in third party sales.  The plaintiffs also allege that Exxon lists unreasonable and excessive charges and costs in its books, leading to undervaluation of the gas and unreasonably low royalties.  The plaintiffs sought to certify a class of all current and former owners of royalty interests on Exxon natural gas leases where any subsidiary, affiliate, or division of Exxon markets or purchases the natural gas.  The putative class included royalty interest owners in Alabama, Arkansas, California, Colorado, Florida, Kansas, Louisiana, Mississippi, Montana, New Mexico, North Dakota, Oklahoma, Texas, Utah, and Wyoming.

Hunter's royalty interests arise from three separate 1934 leases, a 1938 Royalty Contract, and a Division Order.  Her 1934

_____

[1]Plaintiffs' counsel conceded at the hearing on class certification that Stirman does not qualify as a member of the class.

3

Port City Tract Mineral Lease provides for royalty payments based on market value for gas sold or used off the premises, but for royalty payments based on the amount realized from the sale of gas sold at the wells.   Another of her 1934 leases provides for payments of gas royalties based on "the reasonable market value at the wells of all gas produced or manufactured from said premises and sold or used off said premises . . . ."  However, the 1938 Royalty Contract contains a clause which the defendant's expert, Professor Bruce Kramer, testified could be held to modify any implied covenant to market.[2]

In its initial order on February 24, 2000, the district court found the plaintiffs met the requirements of Rule 23(a) for class certification.  These requirements are:

> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
> (4) the representative parties will fairly and adequately protect the interests of the class.

---

[2]The clause states, in Section X of the 1938 Royalty Contract:

> The extent to which Humble [the predecessor in interest to Exxon] will be required to develop and operate said land described in Exhibit "A", hereto attached, and said leases described in Exhibit "B", hereto attached, is expressly set out in this contract and in the original leases, respectively, and no obligations are to be implied on account of the royalties and overriding royalties provided for in said deed and assignment of even date herewith, and provided for in this contract, or by reason of any other terms and provisions of said deed, assignment, and this contract.

4

Fed. R. Civ. P. 23(a). The parties do not dispute the first requirement, numerosity. According to the affidavit of John Rockwell, the Litigation Coordinator for Exxon Mobil's North American Controller's Ownership Group, Upstream Business Services, Exxon has over 13,000 natural gas leases and 67,904 unique interest owners who receive royalty and/or working interest owner payments.[3] As to commonality, the district court stated:

> Plaintiffs claim that Exxon Mobil engaged in a class-wide course of conduct by failing to market gas in such a way as to maximize the Plaintiffs' returns. Whether or not this conduct satisfied the "reasonably prudent operator" standard is, as Plaintiffs argue, a common issue of fact and law. The Court finds that commonality has been satisfied.

Stirman v. Exxon Corp., No. SA-99-CA-0763 (W.D. Tx.), Feb. 24, 2000 Order at 2 ("February 24, 2000 Order"). Although the putative class members had different types of leases, the district court found that this did not destroy typicality, as all the asserted claims would consist of the same basic legal elements (subject to a finding that state law variations did not make class certification infeasible). Id. at 2-3. The court determined that counsel was qualified to represent the class, but did not address whether Hunter and Stirman were themselves adequate class representatives. Id. at 3. The court's discussion of each of these factors was brief.

Additionally, in order to maintain an action as a class

---

[3]These numbers include leases with state and federal government entities, which are not a part of the class.

action, the plaintiffs must qualify under one of the three prongs of Federal Rule of Civil Procedure 23(b).  The plaintiffs sought to certify the class under 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  The court found that variations in individual leases and in applicable statutes of limitation did not destroy commonality.  However, the court found that differences in the applicable law of the fifteen different states where leases were held, as well as difficulties in identifying individual class members and determining whether a breach occurred in each case, could present problems.  Accordingly, the court did not yet find that common issues predominated, but instead ordered more discovery on these issues.  Id. at 5.  The district court did not address superiority.

After additional discovery, the plaintiffs again moved for class certification.  In its February 22, 2001 order, the district court did not certify the class, but called for an evidentiary hearing on whether class certification was appropriate given the different state laws that could apply.  In its order, the district court stated that:

> there is little serious question that an implied covenant
> to market exists throughout the jurisdictions at issue,
> unless the lease in issue expressly precludes that
> conclusion.  In addition, there seems to be a consensus

6

in the law that the standard to be applied in determining whether such a covenant has been breached is the reasonably prudent operator standard.

Stirman v. Exxon, No. SA-99-CA-0763 (W.D. Tx.), Feb. 22, 2001 Order at 2 ("February 22, 2001 Order"). However, the court noted that it had not reached a final determination on these issues. Further, the court listed nine considerations raised by the defendant that it found to be of concern and to require an evidentiary hearing before resolution.[4]

At the evidentiary hearing, the plaintiffs offered the expert testimony of John Tysseling, an economist familiar with the natural gas industry. He testified that royalties are often calculated on

---

[4]These issues were:

(1) whether the implied covenant [to market] is implied in law or in fact; (2) whether parties may modify, by agreement, the reasonably prudent operator standard; (3) whether a covenant to market is equally applicable to leases or division orders using the terms "net proceeds," "gross proceeds," "market value," or "prevailing market price"; (4) whether any express terms in the documents at issue negate the presence of an implied covenant; (5) whether the implied covenant in a given jurisdiction encompasses the duty the Plaintiffs seek to impose here; (6) how, or if, the relevant market value is to be determined; (7) whether the jurisdiction at issue has statutory provisions for division orders and whether those orders specify the calculation for royalty payments and whether the terms of any division orders may change the royalty calculation methodology specified in the relevant leases; (8) whether a condition precedent must be fulfilled prior to the filing of a lawsuit raising the implied covenant to market; (9) the necessity of conducting an individualized inquiry regarding Exxon's selling practices throughout the United states [sic] at a single time.

February 22, 2001 Order at 2.

7

the basis of a field price index, which is an index of the value of the gas measured at a point in the field near the wellhead, and that this was how the price of the plaintiffs' gas was calculated. He added that this most likely does not represent the best price reasonably available. Further, he did not believe that there would be a need to analyze market value in each individual transaction, because Exxon's own computerized records would demonstrate the price it paid for gas in third-party transactions, which would represent a fair market value for the gas. He did admit that particularized facts and circumstances, including different geographic locations, might lead to different market valuations. He also admitted that if state laws differed on whether Exxon could deduct the costs of making gas marketable from royalty payments, this would affect the price upon which royalties are calculated. He stated that the computer records should be able to identify sales of gas to Exxon affiliates, and would keep track of royalty transactions.

They also offered the legal analysis of Professor Jacqueline Weaver, professor of oil and gas law at the University of Houston.[5] She argued that all oil and gas lessors are subject to the reasonably prudent operator standard, and that in very few cases do lessees attempt to lessen the burden of this standard by express

---

[5]Prof. Weaver was originally retained by the plaintiffs as an expert in this case, but by the time of the evidentiary hearing had become one of the plaintiffs' lawyers instead.

lease provisions. She also pointed to cases stating that an implied covenant to market exists in both market value and proceeds leases, and this includes the duty to obtain the best current price reasonably available. Weaver also cited statutes from eight of the states involved, which state that division orders cannot override an oil and gas lease, and noted that the Howard Williams and Charles Meyers Oil and Gas Law treatise concurred. The plaintiffs also pointed to a law review article by Professor Kramer which notes that a lessee has a duty to secure the highest price obtainable for the gas being marketed.

The defendants called Professor Kramer, the revisor and editor of the Williams and Meyers treatise since 1996, as an expert witness. Contrary to Professor Weaver's arguments, he stated that the division order statutes were not uniform. Some do not address the impact of a division order on an oil and gas lease, and therefore the common law of the jurisdiction in question would control the matter, which is often not clear. Some division order statutes do not make it clear if they are retroactive or not. He testified that the reasonably prudent operator standard applies differently to different areas of operation of the lease, and that different jurisdictions use different standards in defining this term. Further, he stated that the highest court of each state has not made clear that an implied covenant to market even exists in each state. He testified that many factors go into calculating

9

market value, including geographic area, volume of gas, quality of gas, point in time, and competition in the market, and that market value can differ based on all of these.

On May 22, 2001, the district court issued an order certifying a class in this case. The court implicitly found that there is an implied covenant to market gas in a gas lease in each of the relevant states. It further found that differences among the jurisdictions as to whether an implied covenant to market was implied in fact or implied in law are irrelevant, because what is at issue here is whether Exxon violated the implied covenant to market. Stirman v. Exxon Corp., No. SA-99-CA-0763 (W.D. Tx.), May 22, 2001 Order at 2 ("May 22, 2001 Order"). Further, although it would be burdensome to determine if individual leases have express clauses negating the implied covenant to market, the district court found that, "with the assistance of a special master, [this] is not an insurmountable challenge." Id. The court found that there is no serious question that the reasonably prudent operator standard applies to the implied covenant to market in all the applicable states, and that parties do not ordinarily draft express provisions to avoid this standard. Id. at 3. According to the court, the statutes in all the jurisdictions at issue "are uniform in the effect that a division order does not alter the terms of a gas lease, and that to the extent of any variance between a lease and a division order, the lease prevails." Id. The court found that

10

notice and demand were not a prerequisite to an action to recover damages for breach of covenant. Id. at 4. Further, market value could be determined from Exxon's records of sales to third parties, which ordinarily occur in large aggregated packages of gas. Id. Although there might be some individual sales at the wellhead, the court felt these would not be so numerous as to prevent class certification. Id. The court therefore found that common legal and factual issues would predominate, and certified the class.

II

We review the decision of a district court to certify a class for abuse of discretion. Castano v. American Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996). However, that discretion must be exercised within the framework of rule 23. Id., citing Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). "A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." Id., citing General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982); Applewhite v. Reichhold Chems., 67 F.3d 571, 573 (5th Cir. 1995). "Whether the district court applied the correct legal standard in reaching its decision on class certification, however, is a legal question that we review de novo." Berger v. Compaq Computer Corp., 257 F.3d 475, 479 (5th Cir. 2001), clarified on other grounds on denial of rehearing, 2002 U.S. App. LEXIS 579 (5th Cir. Jan 14, 2002) (per curiam), quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 408 (5th Cir.

11

1998).  The party seeking certification bears the burden of demonstrating that the rule 23 requirements have been met.  Id., citing Horton v. Goose Creek Ind. Sch. Dist., 690 F.2d 470, 486 (5th Cir. 1982), cert. denied, 463 U.S. 1207; In re American Medical Sys., 75 F.3d 1069, 1086 (6th Cir. 1996).

We first consider the district court's analysis of the FRCP 23(a) requirements.  The parties do not dispute that numerosity is met, satisfying FRCP 23(a)(1).  Exxon argues that there are not common questions of law or fact, as required by 23(a)(2).  We address this contention in our discussion in Part III of whether common issues of law or fact predominate.

Exxon also argues that Hunter's claims are not typical of the claims of the class, as required by 23(a)(3).  We have stated that:

> the test for typicality is not demanding.  It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.  Typicality does not require a complete identity of claims.  Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class.  If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

James v. City of Dallas, 254 F.3d 551, 571 (5th Cir. 2001) (citations and quotation marks omitted), petition for cert. filed, 70 U.S.L.W. 3194 (U.S. Sept. 17, 2001) (No. 01-475).  The plaintiffs allege that Exxon engaged in a similar course of conduct with respect to each of them, i.e. the underpayment of royalties based on breach of an implied duty to market.  Hunter's royalty

12

agreements provide for payments based on both market value and actual proceeds bases.  The Texas Supreme Court has recently held that there is no implied covenant to market in market value leases, as these have their own express covenant, though there is such an implied covenant in proceeds leases.  See Yzaguirre v. KCS Resources, Inc., 53 S.W.3d 368, 373 (Tex. 2001).  Therefore, in a class action based on alleged breach of an implied covenant to market, there cannot be typicality where there are both market-value and proceeds leases included in the class, at least under Texas law.[6]  Other states take different views of the implied covenant to market, and some have not addressed whether such a covenant exists (see Part III).  Plaintiffs seem to rely on the fact that Hunter, owning both market-value and proceeds-basis leaseholds, is typical of the class.  But the test is whether her claims are typical, not whether she is.  Given the differences among the state laws, it cannot be said that Hunter's claims are "typical" of the class as it is currently defined, that is, to include all leases.

Exxon also contests adequacy of representation under 23(a)(4).  "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the

_____

[6]In an unpublished opinion, a Texas appeals court recently decertified a class of oil and gas royalty interest owners which included both market-value and proceeds leases, in the wake of Yzaguirre.  See Phillips Petroleum Co. v. Bowden, 2001 WL 1249995, *1-*2 (Tex. App. 2001).  Although this opinion was unpublished and is not precedent, we agree with its reasoning.

13

two." Berger, 257 F.3d at 479. We must consider "[1] the zeal and competence of the representative[s'] counsel and ... [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" Id., citing Horton v. Goose Creek Indep. Sch. Dist., 690 F.2d 470, 484 (5th Cir. 1982) (citations omitted). The district court found plaintiffs' counsel to be adequate, and Exxon does not argue in its brief that they are not adequate. However, the district court never addressed whether Hunter is herself an adequate representative. Although the district court stated that "no conflicts exist to preclude certification," this is not a sufficiently "rigorous" analysis to demonstrate that Hunter is an adequate representative. For example, it is suggested that Hunter's leases differ from the leases of other class members. Further, Hunter has already agreed to abide by the Texas statute of limitations, even though this might cause other class members who might live in other jurisdictions with longer statutes of limitations to lose some of their claims. Therefore, because the district court is required to conduct its own analysis to determine if the rule 23 requirements are met,[7] the district court erred by

_____

[7]Plaintiffs erroneously argue that "Exxon's contention that Ms. Hunter is an inadequate representative . . . was not raised below and has therefore been waived." Even if Exxon had stipulated to certification, the court was bound to conduct its own thorough rule 23(a) inquiry. "'The purpose of this analysis is to protect unknown or unnamed potential class members, and by definition those people do not and cannot participate in any stipulations concocted by the named parties.'" Berger, 257 F.3d at 480 n.8 (quoting

14

failing to consider Hunter's adequacy.

III

We next consider the district court's analysis under FRCP 23(b)(3). We first ask whether common questions of law or fact predominate over individual questions. In <u>Castano</u>, the district court certified a nationwide class under FRCP 23(b)(3), consisting of nicotine-dependent persons who had bought and smoked cigarettes manufactured by the defendants, as well as their estates and relatives who were their heirs or survivors.[8] We stated:

<u>Hervey v. City of Little Rock</u>, 787 F.2d 1223, 1227 (8th Cir. 1986)). The court has the duty to protect the constitutional, due process rights of the absent class members. <u>Id</u>. at 481. The district court made no findings as to Hunter's adequacy; it only concluded that Hunter's counsel was adequate. Nor do the plaintiffs seem to have submitted any evidence on this count.

There is reason to suspect that Hunter will not be an adequate representative. "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." <u>In re American Medical Sys.</u>, 75 F.3d at 1083. Hunter has no incentive to fully litigate those claims not applicable to her. Further, if one of her leases is more valuable than the others, she has an incentive to litigate claims relating to that lease over other claims.

Hunter may have already forfeited the rights of some class members. She has offered to stipulate to Texas's statute of limitations and a four-year limit on seeking damages. Presumably, some potential class members' claims will be barred under such an agreement.

[8]Specifically, the class consisted of:

(a) All nicotine-dependent persons in the United States . . . who have purchased and smoked cigarettes manufactured by the defendants;
(b) the estates, representatives, and administrators of these nicotine-dependent cigarette smokers; and
(c) the spouses, children, relatives and "significant others" of these nicotine-dependent cigarette smokers as their heirs

15

> In a multi-state class action, variations in state law may swamp any common issues and defeat predominance . . . . Accordingly, a district court must consider how variations in state law affect predominance and superiority . . . . A requirement that a court know which law will apply before making a predominance determination is especially important when there may be differences in state law.

Castano, 84 F.3d at 741 (citations omitted). A cursory review of state law variations is not sufficient. Id. at 742.

Here the district court did consider variations in state law, and found them to not prevent class certification. However, this analysis did not take into account significant variations in state law that defeat predominance.

In order for common issues to predominate, each of the states whose law is at issue must recognize an implied covenant to market, which is the heart of this class action.[9] An implied covenant to market has been found generally in Arkansas,[10] Colorado,[11] Kansas,[12]

---

> or survivors.

Castano, 84 F.3d at 737.

[9]The relevant state laws must be uniform in other necessary aspects as well, but here we address only the implied covenant to market.

[10]See Seeco, Inc. v. Hales, 22 S.W.3d 157, 180-81 (Ark. 2000) (discussing implied covenant to market claim brought by plaintiffs, and giving no indication that this was improper).

[11]See Davis v. Cramer, 808 P.2d 358, 361 (Col. 1991) (en banc) ("Embodied in the covenant to operate diligently and prudently is the implied covenant to market.")

[12]See Smith v. Amoco Production Co., 31 P.3d 255, 257 (Kan. 2001); Gilmore v. Superior Oil Company, 388 P.2d 602, 606 (Kan. 1964) ("Kansas has always recognized the duty of the lessee under

16

Louisiana,[13] Montana,[14] and New Mexico.[15] Oklahoma generally recognizes an implied covenant to market,[16] but does not always recognize such a covenant on behalf of overriding royalty owners.[17] In contrast, Colorado has allowed overriding royalty owners to sue

---

an oil and gas lease not only to find if there is oil and gas but to use reasonable diligence in finding a market for the product.").

[13]See Caskey v. Kelly Oil Co., 737 So.2d 1257, 1261 (La. 1999) (Louisiana cases have recognized "the obligation to diligently market the minerals discovered and capable of production in paying quantities").

[14] See Severson v. Barstow, 63 P.2d 1022, 1024 (Mont. 1936) ("Where, as here, the principal consideration for a lease is the payment of royalty, the lease carries an implied covenant to use reasonable diligence to market the product when produced, although the lease is silent on the subject, and whatever is implied in a contract is as effectual as what is expressed . . . .").

[15]See Libby v. De Baca, 179 P.2d 263, 265 (N.M. 1947) (a lessee "must proceed with reasonable diligence, as viewed from the standpoint of the reasonably prudent operator . . . to market the product").

[16]See Crain v. Hill Resources, Inc., 972 P.2d 1179, 1181 (Okla. Civ. App. 1998) ("An oil and gas lease may be terminated for breach of the implied covenant to market the product."); Gazin v. Pan American Petroleum Corp., 367 P.2d 1010, 1012 (Okla. 1961), quoting McVicker v. Horn, Robinson and Nathan, 322 P.2d 410, 411 (Okla. 1958) ("Where an oil and gas lease does not, in express terms, provide for the marketing of the product of a well drilled on leased land, any covenant on the part of the lessee to do this can only be an implied one, in which instance said lessee has a reasonable time, after completion of the well, to comply with such covenant.")

[17]See XAE Corp. v. SMR Property Management Co., 968 P.2d 1201, 1202 (Okla. 1998) ("We hold that there is no implied covenant to market applicable in this case because no obligation was undertaken in the instrument creating the overriding royalty interest and because the interest was an in-kind interest deliverable at the wellhead.")

17

based on an implied covenant to market.[18]  Texas recognizes an implied covenant to market in proceeds leases, but not in market value leases.[19]  In a case involving Utah oil and gas leases, the Tenth Circuit stated that there is an implied covenant to market in oil and gas leases.[20]  However, the Tenth Circuit did not cite any Utah authorities for this proposition, and the Utah courts do not seem to have addressed this issue.  Finally, the Wyoming courts seem to have recognized an implied covenant to market.[21]

Although the plaintiffs cited cases from the remaining jurisdictions, these cases do not in fact demonstrate that there is an implied covenant to market in these states.  In Sheffield v. Exxon Corp., 424 So.2d 1297, 1299-1300 (Ala. 1982), the lessors in a number of oil and gas leases sued the lessees (various oil and gas companies), alleging, in part, breach of implied obligations reasonably to develop the subject premises and to protect against

---

[18]See Rogers v. Westerman Farm Co., 29 P.3d 887, 902 (Colo. 2001); Garman v. Conoco, 886 P.2d 652, 657 (Colo. 1994).

[19]See Yzaguirre v. KSC Resources, 53 S.W.3d 368, 374 (Tex. 2001).

[20]See Phillips Petroleum Co. v. Peterson, 218 F.2d 926, 934 (10th Cir. 1954).

[21]See Phillips v. Hamilton, 95 P. 846, 848 (Wyo. 1908) ("But it is admitted in argument-and we think rightly so-that the lease does contain an implied covenant that the work of prospecting and development should continue, after the expiration of the year within which the lessee was to commence operation, with reasonable diligence. It is evident that the purpose of the lease was to explore the premises, and, if oil or gas was found therein in paying quantities, to produce and market the same for the mutual benefit of both parties.").

18

drainage. The court's statements indicated that the reasonably prudent operator standard applies to the implied covenant of protection against drainage, but the court did not mention an implied covenant to market. Id. at 1304. Hartman Ranch Co. v. Associated Oil Co., 73 P.2d 1163, 1166 (Cal. 1937) stated that, "[i]n the absence of express provisions, it is well settled that covenants will be implied to use reasonable diligence in the exploration and discovery of oil, and thereafter in the development of the oil lease, and protection from drainage through wells on adjoining land," but did not discuss an implied covenant to market. Welles v. Berry, 434 So.2d 982, 985 (Fla. App. 1983) discusses implied covenants to exploit the land for oil and gas, but not an implied covenant to market. See also Deerfield Rock Corp. v. McClellan, 121 So.2d 822, 824 (Fla. App. 1960) ("in the absence of an express provision designating the time for commencing and performing mining operations, there arises an implied covenant to begin the mining operations within a reasonable period of time and to develop and work the mine in a proper manner and with reasonable diligence."). The Mississippi case that Hunter points to does not discuss an implied covenant to market. See Phillips Petroleum Co. v. Millette, 72 So.2d 176, 178-79 (Miss. 1954). Instead, the case holds that the prudent operator rule is not applicable to suits for recovery of drainage through a well drilled on an adjoining tract, by a common lessee of one tract of land, although the lessee is

19

required to pay the lessor for his oil that is extracted. <u>Id</u>. <u>Ridl v. EP Operating Limited Partnership</u>, 553 N.W.2d 784, 788 (N.D. 1996), discusses the prudent operator standard in the context of the implied covenant of reasonable development of an oil and gas lease, but not an implied covenant to market. This court has not adduced any other authorities in these states that demonstrate that they have recognized an implied covenant to market.

These differences in the law of the jurisdictions at issue demonstrate that the law is not uniform as to any implied covenant to market, or at least that the plaintiffs have not demonstrated uniformity. The plaintiffs have not met their burden of showing that there are common issues of law or fact, or that these predominate over individual issues.

Additionally, the district court never considered whether a class action is a superior method for adjudicating this controversy. The district court must conduct a "rigorous analysis" of the Rule 23 requirements, <u>see</u> <u>Castano</u>, 84 F.3d at 740. This was not done in this case.

We therefore find that it was an abuse of discretion for the district court to certify this class.[22]

---

[22]Because we find that the plaintiffs have not demonstrated that the law with respect to an implied covenant to market is uniform among the fifteen jurisdictions in this case, we need not address Exxon's other arguments with respect to differences in state law. However, on remand the plaintiffs would have to show uniformity with respect to all relevant aspects of the states' laws. We also need not address Exxon's due process, Seventh Amendment, Article III, and Rules Enabling Act arguments. Nor do

IV

For the foregoing reasons, we REVERSE the district court's certification of this class and REMAND for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

---

we express any view regarding whether a different class structure might be acceptable in this case.