United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 24, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

No. 05-60572

LEVI BAKER, On Behalf of Himself
and all others similarly situated,

Plaintiff-Appellee,

VERSUS

WASHINGTON MUTUAL FINANCE GROUP, LLC, ET AL

Defendants,

WASHINGTON MUTUAL FINANCE GROUP, LLC; WASHINGTON MUTUAL FINANCE
OF MISSISSIPPI, LLC,

Defendants-Appellees,

VERSUS

THOMAS SIMMONS; GEORGIA IVY,

Intervenors-Appellants,

RAYMON HAM; LINDA HAM; SAMMIE WILSON; MARGARET WILSON; CONSUELO
MARTIN; ROXIE MCALLISTER; JANICE WARD,

Appellants.

Appeal from the United States District Court
for the Southern District of Mississippi

(1:04-CV-137)

Before DeMOSS, BENAVIDES, and PRADO, Circuit Judges.

PER CURIAM:[*]

Intervenors-Appellants and numerous potential class members (collectively "Appellants") appeal the district court's certification of a mandatory punitive damages settlement class in a lawsuit against Washington Mutual Finance Group, LLC and Washington Mutual Finance of Mississippi, LLC (collectively "Washington Mutual") by individuals alleging that Washington Mutual engaged in various illegal business practices. The district court certified the class under subdivisions (b)(1)(B) and (b)(2) of Federal Rule of Civil Procedure 23. Appellants argue that neither subdivision was a proper vehicle for class certification. We AFFIRM the district court's certification pursuant to Rule 23(b)(1)(B).[1]

## FACTUAL BACKGROUND

The litigation underlying this appeal is a class action lawsuit brought on behalf of individuals who took out loans and bought insurance from Washington Mutual in Mississippi. Generally, the class alleged that Washington Mutual used fraudulent and misleading disclosures to get thousands of borrowers to take out loans and purchase worthless or overpriced insurance products. Specifically, the class alleged that, among other things,

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]Because we hold that certification was not an abuse of discretion under subsection (b)(1)(B), we need not address whether certification was also available under subsection (b)(2).

Washington Mutual inflated the value of collateral to charge higher premiums, failed to disclose various charges and commissions, charged unauthorized fees, and engaged in "insurance packing" and "loan flipping."

The class action described above is not the only ongoing litigation against Washington Mutual. In 1998, counsel for the class in this case also filed an action ("the *Blackmon* case") against Washington Mutual on behalf of 23 individuals alleging similar misconduct. In 2001, a jury awarded those individuals $2.265 million in compensatory damages and $69 million in punitive damages. On appeal, the punitive damages award was reduced to $54 million.

## PROCEDURAL HISTORY

Plaintiff-Appellee Levi Baker ("Baker") filed the instant class action on March 23, 2004. Two days later, Baker moved for preliminary approval of a class settlement.

The settlement defines the class to include individuals who purchased credit and insurance products in Mississippi from Washington Mutual or City Finance, LLC, a company purchased by Washington Mutual. The district court estimated that approximately 45,000 potential class members exist. The settlement agreement excludes from the class persons who have already obtained a judgment or arbitration award against City Finance, LLC or Washington Mutual, even if the judgement or arbitration award has

not yet been finally adjudicated to be meritorious. Therefore, the *Blackmon* case plaintiffs are excluded from participation.

The settlement agreement does not provide for injunctive or declaratory relief. Rather, it attempts to resolve the claims by establishing a $7 million fund for class members who file claim forms. The agreement designates $3.5 million as compensatory damages and $3.5 million as punitive damages. And, the settlement agreement permits class members to opt out their claims for compensatory damages, but precludes them from opting out their claims for punitive damages.

In May 2004, the district court preliminarily approved the settlement agreement. Appellants Thomas Simmons and Georgia Ivy (joined later by other potential class members) moved to intervene and filed a statement of objections challenging the certification of the mandatory punitive damages class. Appellants argued that certification was improper under Rule 23(b)(1)(B) because Baker and Washington Mutual (collectively "Appellees") failed to satisfy the certification requirements established by the United States Supreme Court in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

In October 2004, the district court conducted a fairness hearing. Ultimately, in May 2005, the district court certified the mandatory punitive damages class under subdivision (b)(1)(B). This timely appeal followed.

**DISCUSSION**

4

We review a district court's decision to certify a class for an abuse of discretion. *Stirman v. Exxon Corp.*, 280 F.3d 554, 561 (5th Cir. 2002).

A class can be certified only if it meets each of the requirements outlined in Rule 23(a), which are numerosity, commonality, typicality, and adequate representation. *See* FED. R. CIV. P. 23(a). Appellants concede that the class meets these requirements.

In addition, a class must satisfy at least one of the subdivisions of Rule 23(b). At issue here is subdivision (b)(1)(B). Rule 23(b)(1)(B), which does not provide potential class members with a guaranteed opt-out right, *Ortiz*, 527 U.S. at 834 n.13, permits certification of a mandatory class when:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of . . . (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

FED. R. CIV. P. 23(b)(1)(B). This subdivision is usually applied when a "limited fund" exists, such that non-class members seeking damages would likely deplete the fund and deprive class members of any recovery. *See Ortiz*, 527 U.S. at 842.

Cases in which mandatory class treatment is proper on a limited fund theory have three "presumptively necessary"

5

characteristics. *Id.* at 838-842. First, the totals of the fund and the claims against that fund, "set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims." *Id.* at 838. "Second, the whole of the inadequate fund [will] be devoted to the overwhelming claims." *Id.* at 839. And third, "the claimants identified by [the] common theory of recovery [will be] treated equitably among themselves." *Id.* The issue in this case is the first element--*i.e.*, the inadequacy of the fund to pay all claims.

Appellants contend that Appellees have not established the inadequacy of the fund to pay all claims because they have not demonstrated with precision "the upper limit" of the fund, which is necessarily a prerequisite to an inadequacy showing. *See id.* at 850.

Appellees counter that the $3.5 million of punitive damages agreed upon in the settlement is an adequately defined "upper limit," creating a limited fund which is insufficient to pay all claims. Appellees argue that the basis of this $3.5 million limit is twofold. First, they argue that as a matter of law, substantive due process prohibits excessive punitive damages. S*ee BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996). Second, Appellees contend that Washington Mutual's net worth is in fact valued between $50 million and $70 million and that net worth value limits the amount of punitive damages it can pay. Appellants respond that

6

both arguments give rise to some theoretical limit, but that neither one provides an acceptably precise limit.

The district court accepted both of Appellees' arguments and held that a limited fund existed both legally and factually. We need not address the district court's legal finding that substantive due process and its ban on excessive punitive damages can create a limited fund because the district court's factual finding that a limited fund existed was not an abuse of discretion.

The district court, contrary to Appellants' assertion, relied on more than the simple fact that Washington Mutual's net worth has fallen from approximately $200 million to between $50 and $70 million. Appellants state in their brief that if Washington Mutual's net worth is between $50 and $70 million, $3.5 million must have been "plucked out of thin air" by the settling parties as the limit of what Washington Mutual can pay as punitive damages. But, after citing Washington Mutual's dwindling net worth, the district court went on to explain that the $3.5 million figure was not simply "plucked out of thin air."

As the court noted, Washington Mutual has already ceased operations in Mississippi; thus, the court found it unlikely that Washington Mutual's net worth would increase in the near future. The court then recognized the outstanding $56.265 million award against Washington Mutual from the *Blackmon* case, which has been upheld on appeal by a Mississippi state appellate court and is now

pending before the Mississippi State Supreme Court. If the *Blackmon* award is finally adjudicated to be meritorious, Washington Mutual's net worth will be greatly diminished and perhaps completely eradicated.

In addition, the district court found that if the class is not certified it is likely that tens of thousands of individual lawsuits will ensue. After considering the breathtaking cost of defending against so many individual lawsuits, the district court determined that $3.5 million was the most that Washington Mutual would be able to pay as punitive damages.

After a thorough review of the district court's order, the parties' briefs, and the entire record, we cannot deem the district court's factual determination that $3.5 million was the upper limit an abuse of discretion.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's certification of the mandatory punitive damages settlement class under Rule 23(b)(1)(B).

**AFFIRMED.**