**DORCHESTER MINERALS, LP, Plaintiff**

v.

**CHESAPEAKE EXPLORATION, LLC, Defendant**

**No. 4:12CV00461 JLH**

United States District Court, E.D. Arkansas, Western Division.

Signed March 29, 2016

John Robert Beatty, Joseph A. Unis, Jr., Locke Lord LLP, Dallas, TX, Robert M. Honea, Hardin, Jesson & Terry–Fort Smith, Fort Smith, AR, for Plaintiff.

Amy Lee Dashiell, Scott, Christopher Sileo, Douglass & McConnico, L.L.P., Austin, TX, Douglas M. Carson, Jerry L. Canfield, Daily & Woods, P.L.L.C., Fort Smith, AR, for Defendant.

## OPINION AND ORDER

J. LEON HOLMES, UNITED STATES DISTRICT JUDGE

Dorchester Minerals, LP, is the lessor under an oil and gas lease in which Chesapeake Exploration, LLC, is the lessee. Dorchester contends that the gas royalty clause in the lease provides that Chesapeake must pay royalties based upon the highest price reasonably obtainable for gas sold from the Fayetteville Shale Play, regardless of whether that is the price at which Chesapeake sold the gas. In a previ-

ous order, the Court concluded that the gas royalty clause was ambiguous and that its interpretation must be determined at trial. Dorchester then amended its complaint to include an alternative claim for an implied covenant to market the gas at the best price reasonably obtainable. Chesapeake filed a motion for partial summary judgment on this claim. Because the implied covenant claim was pled in the alternative to Dorchester's claim as to the meaning of the gas royalty clause, the Court deferred ruling on the motion for partial summary judgment as to the implied covenant claim until after the meaning of the gas royalty clause was determined. The Court has now determined that issue against Dorchester, so it is necessary to resolve the motion for partial summary judgment on the implied covenant claim.

Chesapeake's only ground for seeking summary judgment on the implied covenant claim is that the gas royalty clause contains detailed royalty provisions that preclude the application of an implied duty to market. The gas royalty clause provides:

(b) Royalty on Gas. On gas, including casinghead gas or other gaseous substances, produced and saved from the premises [other than for processing at a plant as described in Paragraph 3(d) hereof], Twenty–Five Percent (25.0%) of the proceeds received from any sale of such gas at the point of sale or delivery of the gas produced and saved. Any deduction for the expenses of production, gathering, dehydration, compression, transportation, (except non-affiliated transportation charges incurred on interstate pipelines regulated by the Federal Energy Regulatory Commission and/or pipelines whose transportation rates are regulated by the State of Arkansas. Said transportation charges will be limited to direct for amounts of Les-

sor's gas transported and Lessee will not be able to deduct charges for unutilized pipeline capacity,), manufacturing, processing, treating or marketing of such gas shall be added to the price received by Lessee for such gas so that Lessor's royalty shall not be charged directly or indirectly with any such expenses. Provided, however the proceeds from any such well shall always be equal to or greater than the proceeds received from sales in the field or prevailing area whichever is the greater, but not less than received by Lessee or any of its affiliates, exclusive of the above enumerated expenses except for those transportation charges incurred in a regulated pipeline system as set forth above.

■ The law in Arkansas recognizes an implied duty to market in oil and gas leases. *Klein v. Jones*, 980 F.2d 521, 532 (8th Cir. 1992); *SEECO, Inc. v. Hales*, 341 Ark. 673, 690–95, 22 S.W.3d 157, 167–71 (2000); *Amoco Prod. Co. v. Ware*, 269 Ark. 313, 320–21, 602 S.W.2d 620, 623–24 (1980); *Acre v. Spindletop Oil & Gas Co.*, No. 4:09CV00421 JLH, 2011 WL 902186, at *2 (E.D. Ark. Feb. 22, 2011). The most extensive discussion, and the discussion most directly on point, is that of the Arkansas Supreme· Court in *SEECO*. The *SEECO* opinion has two sections on point, one of which is entitled "Implied Duty to Market Gas," while the other is entitled "Prudent Operator Standard." *SEECO*, 341 Ark. at 690–95, 22 S.W.3d at 167–71. In the section entitled "Implied Duty to Market Gas," the court said, "[w]e agree with the royalty owners' expert that SEECO's duty was to obtain the best price for itself and the lessors." *Id.* at 693, 22 S.W.3d at 170. In the following section, the court explained that "the prudent operator standard is the test for determining whether a lessee has breached any of the implied covenants, including the implied duty to market." *Id.* at 695, 22 S.W.3d at 170.

Chesapeake acknowledges that Arkansas recognizes an implied covenant to market but argues that that implied covenant does not apply where the lease provides detailed royalty provisions. The only Arkansas case that Chesapeake cites in support of that proposition is this Court's opinion in *Acre v. Spindletop*, but that decision did not address the issue. Chesapeake also cites a Texas case, *Yzaguirre v. KCS Resources, Inc.*, 53 S.W.3d 368 (Tex. 2001). There, the Supreme Court of Texas was confronted with a lease that provided for royalties based upon the market value of the gas and a claim by royalty holders that the lessee should have paid royalties based on proceeds when the lessee sold the gas at a price above the market value. While the Texas court recognized an implied covenant to market, the court said, "there is no implied covenant when the oil and gas lease expressly covers the subject matter of an implied covenant." *Id.* at 373. "Because the lease provides an objective basis for calculating royalties that is independent of the price the lessee actually obtains, the lessor does not need the protection of an implied covenant." *Id.* at 374. Thus, "Texas recognizes an implied covenant to market in proceeds leases, but not in market value leases." *Stirman v. Exxon Corp.*, 280 F.3d 554, 565 (5th Cir. 2002).

■ Here, the gas royalty clause is a proceeds lease that does not provide an objective basis for calculating royalties that is independent of the price that the lessee actually obtains. As interpreted by this Court, the gas royalty clause provides for royalties to be based on proceeds of sales of gas from the leases, unless Chesapeake sells the gas downstream on an interstate pipeline and incurs deductible transportation charges that reduce the proceeds below what could have been obtained if the gas had been sold in the field

or prevailing area, in which case royalties must be based on the price that could have been obtained if the gas had been sold in the field or prevailing area. Nevertheless, if Chesapeake were to sell gas in the field or prevailing area to an affiliate at a price below the market value of the gas, or if Chesapeake otherwise were to sell the gas below market value in a transaction that was not at arm's length, it would have violated no provision in the lease. Thus, *Yzaguirre* is not on point.

Furthermore, it is not clear that the Arkansas courts would follow *Yzaguirre*. In *SEECO*, the court was confronted with three types of leases: fixed rate leases, prevailing-market price leases, and proceeds leases. *SEECO*, 341 Ark. at 685, 22 S.W.3d at 164. The court did not differentiate between the three types of leases in holding that SEECO had an implied duty to market the gas as a prudent operator to obtain the best possible contract price under prevailing market conditions. *Id.* at 690–95, 22 S.W.2d at 167–71.

Chesapeake's motion for partial summary judgment on Dorchester's claim of an implied covenant to market is DENIED. Document # 95.

IT IS SO ORDERED this 29th day of March, 2016.