United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 18, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-41760
_____

RICHARD LANGBECKER, ET AL.,

Plaintiffs-Appellees,

versus

ELECTRONIC DATA SYSTEMS CORP., ET AL.,

Defendants,

ELECTRONIC DATA SYSTEMS CORP., ET AL.,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

Before JONES, Chief Judge, and REAVLEY and GARZA, Circuit Judges.

EDITH H. JONES, Chief Judge, joined by GARZA, Circuit Judge:

Although legal remedies exist for the alleged wrongs committed by Electronic Data Systems ("EDS") and its associated defendants for allegedly mismanaging the company's 401(k) Retirement Plan, the Rule 23(b)(1) or (b)(2) class action certified by the district court is not among them. The district court erroneously interpreted the impact, inter alia, of intraclass conflicts and fact-specific defenses arising from ERISA § 404(c) and individual releases. Rule 23(b)(2) is unsuited to provide classwide relief, and Rule 23(b)(1) is conceptually unclear. As a

result, we must VACATE and REMAND the class certification for further consideration.

## I. BACKGROUND

Plaintiffs are current and former employees of EDS[1] who participated in the company's 401(k) defined contribution Retirement Plan ("Plan").[2] Like many employers, EDS offers its employees a menu of retirement options and agrees to match a portion of each employee's annual contribution to his 401(k) account. Participants then select their individual portfolios and decide when and whether to change the mix of investments. Participant accounts, commingled for management purposes, become the assets of the Plan. The Plan's trustees, who are subject to the rigorous fiduciary requirements of ERISA, manage the Plan, select and monitor the investment options, and handle each Participant's account. Significantly, the Plan also invokes ERISA § 404(c), which relieves plan fiduciaries of liability for any loss or breach "which results from such participant's or beneficiary's exercise of control [over the assets in his account]." 29 U.S.C. § 1104(c). The tension between the fiduciary obligations and the

---

[1] The Plaintiffs-Appellees include both participants in the EDS Plan and their beneficiaries. They are referenced collectively as Participants in our discussion. The named Plaintiffs include Jeffrey Clay Smith and Richard Mizell.

[2] More American employees now participate in defined contribution plans such as 401(k) plans than in defined benefit plans. U.S. Department of Labor, Bureau of Labor Statistics, Employee Participation in Defined Benefit and Defined Contribution Plans, 1985-2000, http://www.bls.gov/opub/cwc/cm20030325tb01.htm (last visited Apr. 27, 2006).

employee-directed nature of the accounts provides the backdrop to the instant case.

During the class period, EDS offered Plan Participants between thirteen and eighteen investment options, including an EDS Stock Fund.[3] Plan documents discussed the different funds, explained that employees could direct contributions to a fund or funds of their choice, and rated the fund options on a scale of one to five for risk (one being the least risky and five being the riskiest). Plan documents rated the EDS Stock Fund as "5+" on the risk scale and warned Participants that investing in only one stock violated the diversification principle of portfolio management.[4] The Plan documents also explained that EDS agreed to match up to twenty-five percent of each employee's annual investment, up to six percent of salary, with an investment in the EDS Stock Fund. The matched investments had to remain in the Stock Fund for two years, after which the employee could move the funds as he chose.

On September 18, 2002, EDS published an earnings warning, which precipitated a substantial drop in its stock price (from $36.46 to $17.20 a share). Although the stock price rebounded

---

[3] Whether or to what extent the EDS Stock Fund qualified as an employee stock ownership plan or an eligible individual account plan exempt from certain fiduciary duties pursuant to, for example, 29 U.S.C. §§ 1104(a)(2), 1107(b), is not at issue in this appeal.

[4] As its name implies, the EDS Stock Fund could invest up to ninety-nine percent of its assets in company stock.

3

somewhat in the short term and more in the longer term, a flurry of lawsuits commenced.[5]

This case, while predicated on the same accounting and business irregularities as the securities actions, is brought on behalf of Participants in the Plan. (Participants may be members of the securities lawsuit class as well as the alleged Plan class.) The operative Class Complaint alleges three ERISA fiduciary violations relevant on appeal. In Count I, the Participants allege that the EDS Appellants[6] breached their fiduciary duties of prudence when, despite knowledge of EDS's financial problems, Appellants continued to offer company stock as a Plan investment option; directed and approved investment in the stock rather than in safer alternatives; invested matching funds in EDS stock; failed to take adequate steps to prevent the Plan from suffering losses from its EDS stock investment; and failed to implement a strategy to compensate for the high risk of EDS stock as a Plan investment. Count II alleges that Appellants breached their fiduciary duties by failing to monitor the Benefits Administration Committee and Investment Committee members who supervised the Plan and by failing to provide the committees with accurate information about company

---

[5] This court recently upheld Rule 23(b)(3) class certification in a consolidated securities fraud suit brought against EDS concerning the same events and alleging that the Defendants' actions concealed accounting problems and improperly inflated the value of EDS stock. Feder v. Elec. Data Sys. Corp., 429 F.3d 125 (5th Cir. 2005).

[6] The Defendants-Appellants include, inter alia, EDS executives charged with monitoring the committees running the Plan, as well as members of the Benefits Administration Committee and the Investment Committee.

4

problems. Count IV[7] alleges breach of their duties of loyalty to the Plan because the Appellants failed to act solely in the Participants' interests and for the exclusive purpose of providing Plan benefits. All three Counts proceed under ERISA § 409 and § 502(a)(2) (29 U.S.C. § 1109 (a) and § 1132(a)(2)). The crux of the allegations is the imprudence of company stock as a retirement offering.

Participants request reimbursement to "make good" the losses on behalf of the Plan, but they concede such damages must eventually be allocated among the Participants' accounts. They also seek injunctive relief either to remove the EDS Stock Fund as an optional investment or to replace the current fiduciaries with one or more independent fiduciaries. The district court certified a FED. R. CIV. P. 23(b)(2) class for these claims consisting of all Plan participants and their beneficiaries, excluding the Defendants, for whose accounts the Plan made or maintained investments in EDS stock through the EDS Stock Fund between September 7, 1999, and October 9, 2002. As framed, the Class includes up to eighty-five thousand members.[8]

---

[7] Count III, another fiduciary duty claim based on misrepresentation under ERISA § 502(a)(3) (29 U.S.C. § 1132 (a)(3)), was not certified as a class action by the district court, after it concluded that this claim rested on disparate individual fact issues. The Plaintiffs have not cross-appealed this ruling.

[8] Appellants' expert David Ross calculated about eighty-five thousand class members through the Appellees' original class cutoff date of February 24, 2004. Since the class as certified cuts off in October, 2002, the actual number is probably lower.

5

Appellants sought and were granted interlocutory review pursuant to FED. R. CIV. P. 23(f).

A summary of the district court's closely reasoned opinion regarding certification of these claims is essential to further analysis. Several of the court's legal rulings underpin its conclusion that these claims are amenable to class certification. If the court erred in any of its threshold decisions, the class certification is put at risk.

First, the court rejected Appellants' contention that Appellees' claim should be characterized as individual claims for "other appropriate equitable relief" to redress breaches of fiduciary duty under ERISA § 502(a)(3).[9] See Varity Corp. v. Howe, 516 U.S. 489, 116 S. Ct. 1065 (1996). Instead, the court adopted the Participants' contention that theirs is a "derivative" suit brought on behalf of the Plan pursuant to ERISA § 502(a)(2), in which recovery must "inure[] to the benefit of the plan as a whole," Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140, 105 S. Ct. 3085, 3089 (1985).

Fastening on the derivative suit characterization, the court then ruled that ERISA § 404(c), which relieves fiduciaries of liability where loss results from a participant's exercise of direction and control of his own account, is inapplicable to a suit

---

[9] The court did, however, conclude that the claims for misrepresentation by the fiduciaries were more properly brought under § 502(a)(3) because of the reliance element.

6

on "behalf of the plan as a whole." Finally, the court determined that post-employment releases of claims executed by up to nine thousand potential class members not only did not release claims for the Appellants' breached fiduciary duties but in any event were irrelevant to the maintenance of a classwide claim for derivative relief to the Plan.

Turning to the class action rule, the court emphasized and discussed in tandem the typicality and adequacy factors,[10] which bear on the qualification of class representatives. Because of its focus on the derivative nature of the claims, the court did not consider as stumbling blocks to adequacy and typicality two circumstances arguably at odds with the single-minded focus required of class representatives. First, one of the representatives, Mizell, was a day-trader in EDS stock who continued to buy and sell, to his occasional profit, throughout the tumultuous period following the September 19 price decline. Yet both Mizell and Smith, who also traded in EDS stock short-term, now contend, as putative class representatives, that Appellants should have withdrawn EDS stock as a permissible investment option for all Plan Participants during the class period. Second, the court discounted, also on its overarching derivative suit construct, the

---

[10] In order to merit class action treatment, the allegations of a complaint must initially demonstrate numerosity, commonality of issues, typicality of the class representatives' claims among those of the class, and the adequacy of the representatives and their counsel. See FED. R. CIV. P. 23(a); Feder, 429 F.3d at 129. Neither numerosity nor commonality is at issue here, as the district court noted.

highly individual nature of class members' stock trading patterns. In a securities fraud suit,[11] class members seek recovery for specific transactions affected by fraud. Here, in contrast, the EDS Participants are joined as class members irrespective whether they bought or sold any EDS stock during the relevant period; irrespective whether they traded at a profit in shares that other Participants (fellow class members) sold for a loss simultaneously; and irrespective that some class cutoff dates would be vastly more profitable for some Participants than others. Further, thousands of class members remained invested in EDS stock notwithstanding allegations that it was imprudent to offer or invest in EDS stock during the class period. The court held that because this is a derivative suit on the Plan's behalf for losses "to the Plan as a whole," the class representatives are not asserting claims for losses to individual accounts. Thus, the derivative characterization superseded conflicts among class members or between the class representatives and the class itself.

To the extent that the releases of claims might raise individual defenses, the court, while acknowledging this possibility, reiterated that a plan-wide lawsuit need not be defeated by the peculiarities of individual participants' claims. Similarly, the court attempted to reconcile the ERISA § 404(c) defense with the derivative ERISA § 502(a)(2) action by concluding

_____

[11] It is undisputed that the Plan Participants who bought or sold EDS stock are members of the class certified in Feder, supra.

that (1) the defense is inapplicable to a fiduciary duty breach consisting of imprudent plan management and selection of investment options, and (2) the defense, being personal and transactional to a participant, cannot be applied where claims are made on behalf of the plan.

Having disposed of objections to the maintenance of a "derivative" suit for the Plan and to class action treatment, the court concluded that certification under Rules 23(b)(1) and (2) was appropriate.

Respecting Rule 23(b)(1), the court held that because the claims are asserted on behalf of the Plan as a whole the Appellants are "obligated to treat class members alike via their treatment of the Plan itself." Further, the court foresaw a risk of inconsistent adjudication if multiple separate § 502(a)(2) cases were pursued against the Plan.

The court justified its Rule 23(b)(2) certification reasoning that (1) the complaint seeks "predominately" injunctive relief, i.e., removal of the EDS Stock Fund as an investment option and/or removal of the current fiduciaries, and (2) the monetary relief requested is a "group remedy" and "subservient" to the injunctive relief. In a footnote attached to this paragraph, the court acknowledged that a fiduciary would have to be appointed to oversee allocation of any monetary recovery among Plan Participants. Neither a Rule 23(b)(1) or (2) class action requires notice to class members or the option to opt-out.

9

## II. DISCUSSION

This court reviews the district court's certification decision for abuse of discretion. <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 100, 101 S. Ct. 2193, 2200 (1981). The district court's discretion must be exercised within the boundaries of Rule 23. <u>Id.</u> Where a district court rests its legal analysis on an erroneous understanding of governing law, it has abused its discretion. <u>Unger v. Amedisys Inc.</u>, 401 F.3d 316, 320 (5th Cir. 2004). Although federal courts cannot assess the merits of the case at the certification stage, they must evaluate with rigor "the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of the certification issues." <u>Id.</u> at 321 (quoting <u>Castano v. Am. Tobacco Co.</u>, 84 F.3d 734, 744 (5th Cir. 1996)).

The party seeking class certification bears the burden of meeting all the Rule 23 requirements. <u>Berger v. Compaq Computer Corp.</u>, 257 F.3d 475, 479-80 (5th Cir. 2001). As was alluded to above, the requirements fall into two general groups: the four 23(a) requirements (numerosity, commonality, typicality, and representativeness), which must be met by all proposed class actions; and the three groups of Rule 23(b) requirements, one of which must be met by the proposed class.[12]

---

[12] <u>E.g.</u>, <u>Stirman v. Exxon Corp.</u>, 280 F.3d 554, 558-59 (5th Cir. 2002).

Courts should not confuse rulings on the merits of claims with the class certification decision. As noted above, however, the district court's threshold legal rulings are essential to its conclusion that this case may be maintained as a class action. We must accordingly consider briefly whether (1) ERISA § 502(a)(2) entitled Plan Participants to seek derivative relief for "the plan as a whole" to recover "plan losses" that allegedly resulted from Appellants' fiduciary duty breaches; and (2) whether either ERISA § 404(c) or the releases executed by about nine thousand Participants bar class certification.

## A. Section 502(a)(2).

An ERISA fiduciary must act with prudence, loyalty and disinterestedness, requirements carefully delineated in the statute. See generally 29 U.S.C. § 1104(a)[13]. ERISA § 502(a)(2) authorizes any plan participant or beneficiary to sue on behalf of the plan to remedy a breach of these duties, to require the

---

[13] These duties under the statute include, "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Id. § 1104(a)(1)(B). The DOL's regulation under § 404(a)(1)(B) says that a fiduciary must "give[] appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved . . ." and must act accordingly. 29 C.F.R. § 2550.404a-1(b)(1)(i)-(ii). Appropriate consideration includes "[a] determination by the fiduciary that the particular investment or investment course of action is reasonably designed, as part of the portfolio, . . . to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action." Id. § 2550.404a-1(b)(2)(i). For a non-§ 404(c) plan, the fiduciary's selecting an investment (as provided in § 404(a)(1)(B)) is not only like a fiduciary's selecting an investment option, but also like a participant's investing in an option under § 404(c).

11

fiduciaries personally to "make good" any "losses to the plan" so caused, or to replace the fiduciaries.[14]  29 U.S.C. § 1132(a)(2); § 1109(a).  Appellants strenuously contend that this suit, which alleges that Appellants breached fiduciary duties by failing to limit the Plan's offering of and investment in EDS stock, cannot proceed under § 502(a)(2) because the Plan consists of individual Participant-directed investments.  More precisely, Appellants contend that since any recovery of monetary damages would have to be allocated among up to eighty-five thousand class members based on each Participant's widely divergent stock trading and holding strategy, no Plan-wide relief can be fashioned.

To the extent Appellants' contention is that no plan-wide fiduciary duties exist with respect to 401(k) participant-directed plans, it is clearly overbroad.  ERISA does not distinguish fiduciary duties according to the type of employee investment or pension plans at issue.  The Supreme Court described Congress's concern about "the possible misuse of plan assets, and with remedies that would protect the entire plan," also without limitation concerning the type of plan.  Russell, 473 U.S. at 142, 105 S. Ct. at 3090.  Certain fiduciary duty breaches can injure

---

[14]    In this "comprehensive and reticulated statute," Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361, 100 S. Ct. 1723, 1726 (1980), ERISA § 502 (29 U.S.C. § 1132) authorizes two other types of remedial actions. Section 502 (a)(1) enables beneficiaries to sue for plan "benefits."  Section 502 (a)(2), as noted above, provides for suits against fiduciaries on behalf of the plan.  Section 502 (a)(3) is a "catchall" provision entitling a beneficiary to "other appropriate equitable relief" for fiduciary duty breaches.  See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 221 & n. 5, 122 S. Ct. 708, 718 (2002).

12

401(k) participants generally and indiscriminately: theft from the plan; mapping;[15] noncompliance with ERISA-mandated duties to inform; engaging in transactions that involve conflicts of interest; and setting unreasonable blackouts are among the possibilities.[16] Allegations that ERISA fiduciaries promoted company stock to prop up its value or misled participants could also state plan-wide breaches of fiduciary duties.[17]

In this case, however, the description and indeed existence of a Plan-wide fiduciary breach are elusive at this preliminary stage of the case. The key contention is that the fiduciaries "knew" EDS stock was too risky to be offered or allowed as an investment by any Participant (or the vast bulk of them) in the 401(k) Plan during the period in question. This contention challenges the fiduciaries' judgment that EDS was or remained a prudent investment for the Plan to offer.[18] Hindsight is easy in a case like that of Worldcom, a company so infected by over-

---

[15] When employee funds are transferred from one plan to another, some companies use a process called "mapping." With "mapping," each of the displaced investment options is compared to the new options. During conversion, amounts are automatically transferred or "mapped" from the displaced option to the most comparable new option. See Wiseman v. First Citizens Bank & Trust Co., 212 F.R.D. 482, 484 (W.D.N.C. 2003).

[16] This opinion does not concern, and we do not opine on the subjects covered in the recent opinion, Milofsky v. American Airlines, 418 F.3d 429 (5th Cir. 2005), vacated en banc, 442 F.3d 311 (5th Cir. 2006).

[17] To the extent allegations of nondisclosure were made against Appellants in this case, the district court ruled that individual reliance issues precluded certification of a § 502(a)(2) class.

[18] Under ERISA, the prudence of investments or classes of investments offered by a plan must be judged individually. See In re Unisys Sav. Plan Litig., 74 F.3d 420, 438-41 (3d Cir. 1996).

extension and fraud that it collapsed, and its stock became worthless. EDS, despite its alleged failings, is not in that category. From the facts adduced at the class determination stage, it is far from clear that EDS stock became too risky to be a permissible 401(k) offering or the basis for the employer-matching contribution. Thousands of Plan Participants continued to purchase EDS stock regularly after the company's adverse disclosures and after the price dropped. Thousands held on to their EDS stock rather than sell. The stock price has slowly but steadily rebounded. Given these facts, plus the long-term horizon of retirement investing and the favored status Congress has granted to employee stock investments in their own companies, ascribing a Plan-wide fiduciary failure to Appellants seems fraught with uncertainty.[19] Nevertheless, at this preliminary stage, we cannot rule out Appellees' theories as a matter of law. Correlatively, the possibility of a suit on behalf of the Plan as a whole is not eliminated simply by the fact that any recovery would have to be allocated among individual Participants' 401(k) accounts.[20]

---

[19] The Third Circuit wisely balanced the competing policies of ERISA fiduciary duties with statutory exemptions to those duties crafted by Congress to encourage employees' investments in their companies' stocks. See Moench v. Robertson, 62 F.3d 553, 568-73 (3d Cir. 1995). The Moench standard was adopted by the Sixth Circuit, see Kuper v. Iovenko, 66 F.3d 1447, 1458-59 (6th Cir. 1995), and favorably commented on by the Ninth Circuit, Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1097-98 (9th Cir. 2004).

[20] We note that Participants would not be eligible to pursue relief under § 502(a)(3) for "other equitable relief" under Great-West because the damages they seek do not restore to them specific funds that were inequitably kept in the Defendants' possession. At best, their action would seem to be one for legal restitution, which is not cognizable under § 502(a)(3). See Great-West, 534 U.S. at 214, 122 S. Ct. at 714-15.

**B.    Section 404(c) Defense.**

While a brief look at the Participants' theories confirms the district court's conclusion that § 502(a)(2) claims could be brought on behalf of the Plan, the same cannot be said for the court's rejection of § 404(c) as a defense to the derivative claims.    Just as ERISA's fiduciary duties may be breached on a plan-wide basis, so, too, must the § 404(c) defense be considered in its relation to the causes of action for recovery on behalf of a plan as a whole.    Section 404(c) relieves a fiduciary from liability "for any loss" or "by reason of any breach" if the plan is an individual account plan and the loss "results from" a participant's exercise of control over assets in his account.[21]

---

[21]    ERISA § 404(c), 29 U.S.C. § 1104(c), entitled "Control over assets by participant or beneficiary," reads in full:

> (1)    In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)
>> (A)    such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and
>> (B)    no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.
> (2)    In the case of a simple retirement account established pursuant to a qualified salary reduction arrangement under section 408(p) of Title 26, a participant or beneficiary shall, for purposes of paragraph (1), be treated as exercising control over the assets in the account upon the earliest of--
>> (A)    an affirmative election among investment options with respect to the initial investment of any contribution,
>> (B)    a rollover to any other simple retirement account or individual retirement plan, or
>> (C)    one year after the simple retirement account is established.
> No reports, other than those required under section 1021(g) of this title, shall be required with respect to a simple retirement account established pursuant to such a qualified salary reduction

This provision places responsibility for the success or failure of a participant's investments on his own choices among the portfolio offered in the plan. The defense does not apply to all plans, however. The Department of Labor is charged with defining the term "exercises control." In its regulations, the Department implemented the Congressional purpose to qualify plans for this defense only if, inter alia, they offer a diversified array of investments; provide adequate information concerning the investments to the participants; and authorize flexible and autonomous control by the participants. See 29 C.F.R. § 2550.404c-1 (2005). EDS's Plan claims to fulfill the § 404(c) criteria for purposes of the allegations at issue in this appeal. Nevertheless, the district court held that "[a]s a separate entity, the Plan should not be subject to a defense that can only apply to particular participants and particular transactions." We disagree with this conclusion.

Neither ERISA's remedy provision, § 502(a)(2), nor § 404(c) articulates an exception to the availability of the § 404(c) defense when a plaintiff sues on behalf of a plan. It is the courts' duty to harmonize statutory provisions, not, as the district court did, to eliminate one for the sake of crafting a more expansive remedy. In any event, the provisions do not conflict. The EDS 401(k) Plan is by definition the sum of the

arrangement.

16

investment choices of its participants. If plan fiduciaries violate their duties, § 502(a)(2), as noted above, often affords a classwide remedy. Determining whether the fiduciary is relieved of liability because of § 404(c) is merely part of the statutory calculus.

A simple example will suffice to demonstrate how the provisions can work together. Suppose Plan fiduciaries neglected to credit 401(k) plan accounts with stock dividends that had been received. A Participant could sue under § 502(a)(2) to recover the amount of the dividends and allocate them among accounts. The § 404(c) defense would play no role, because losses were unconnected to the Participant's exercise of control over his individual account.

This case raises a more complex interpretive question whether the losses "result from" the participants' exercise of control pursuant to § 404(c). The losses here could not have occurred but for two separate acts: the fiduciary's inclusion of "bad" stocks into the pot, and the participants' choices to invest in those "bad" stocks with full § 404(c) disclosure. When there are two actual causes of the loss, assuming the plan complies with § 404(c) regulations, how does a court determine whether the loss "results from" the participants' exercise of control, which in turn determines whether the defense applies? Section 404(c) appears to leave the question open. Accordingly, the Department of Labor regulations come into play.

17

The Department has decided that § 404(c) may be a defense to liability when the loss is "**the direct and necessary result** of that participant's or beneficiary's exercise of control." 29 C.F.R. § 2550.404c-1(d)(2)(i) (emphasis added). The DOL's regulation gives the statutory term "result from" a narrow construction, but it is consistent with the statutory language—no liability when the losses "**result from** such participant's or beneficiary's exercise of control." See 29 U.S.C. § 1104(c)(1)(A)(ii) (emphasis added).

An explanatory footnote to the regulation, however, narrows the statutory language even more in cases where the allegation is that the fiduciary was imprudent in its designation of investment options:

> [T]he Department points out that the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA § 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant's direction of such plan.

Final Regulations Regarding Particular Directed Individual Account Plans (ERISA § 404(c) plans), 57 Fed. Reg. 46906, 46924-225, n.27 (General Preamble, n.27). The DOL as amicus, the dissent and the Appellees take this footnote to mean that when a plan loses money by reason of the fiduciary's inclusion of an imprudent investment option, none of the loss is the direct and necessary result of the

18

participant's exercise of control.  If the footnote is correct, it bars § 404(c) as a defense to EDS's alleged breach in such cases.

Because application of the standard of judicial deference owed to the agency's footnote is not determinative, we assume arguendo that the more demanding <u>Chevron</u> standard applies.[22]  The issue then becomes whether the DOL's footnote reasonably interprets § 404(c) under <u>Chevron</u> Step II.  We conclude it is not reasonable. Most important, the footnote does not reasonably interpret § 404(c) itself, because it contradicts the governing statutory language in cases where an individual account plan fully complies with the regulations' disclosure, diversification and participant-control provisions, and loss is caused, notwithstanding some other fiduciary duty breach, by the participants' investment decisions.

_____

[22]     There is much disagreement over whether the DOL's footnote is entitled to <u>Chevron</u> deference.  It can be asserted that the footnote itself was subject to notice and comment rulemaking and therefore is subject to the <u>Chevron</u> steps.  The "Final Regulation Regarding Participant Directed Individual Account Plans" includes the footnote, even though it is not in the actual "Code of Federal Regulations."  57 F.R. 46906-01.  This is because the CFR never publishes the preambles of the Final Regulations, even though the preambles were part of the notice and comment process.  The final rule in its entirety, including the preamble, is published only in the Federal Register.  For an explanation of what portions of regulations are published in certain books, <u>see</u> <u>www.11sdc.org/sourcebook/fed-reg-cfr.htm.</u>  In this case, footnote 27 was included in the original notice, <u>see</u> 52 F.R. 33508, and received comments before final passage.

Nevertheless, the footnote constitutes at best a comment on the regulations, and is not itself a regulation.  Thus, an alternative argument can be made that neither <u>Chevron</u> nor <u>Auer</u> deference is owed.  <u>See</u> <u>Auer v. Robbins</u>, 519 U.S. 452, 461, 117 S.Ct. 905, 911 (1997); <u>Chevron USA Inc. v. Natural Resources Defense Counsel Inc.</u>, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82 (1984).  The dissent  asserts that the footnote represents an "interpretation" of the DOL regulation, to which <u>Chevron</u> deference is due.  What the dissent overlooks, however, is that this rule only applies if the regulation was <u>ambiguous</u>.  <u>See</u> <u>Wells Fargo Bank of Texas and A.V. James</u>, 321 F. 3d 488, 494 (5th Cir. 2003); <u>Christensen v. Harris County</u>, 529 U.S. 585, 120 S.Ct. 1655, 1663 (2000).  Neither the dissent nor any of the authorities it cites points to an ambiguity in the regulation.

The DOL footnote would render the § 404(c) defense applicable only where plan managers breached no fiduciary duty, and thus only where it is unnecessary. Similarly, the footnote is in tension with the actual DOL regulation, which does no more than narrowly construe § 404(c) to authorize the defense for a fiduciary when a loss is a "direct and necessary result" of a participant's exercise of control. See 29 C.F.R. § 2550.404c-1(d)(2)(i). The regulation also stresses that, "whether a participant . . . has exercised independent control in fact with respect to a transaction depends on the facts and circumstances of the particular case." 29 C.F.R. § 2550.404c-1(c)(2). The footnote is at odds with these provisions by appearing to eliminate a § 404(c) defense altogether, rather than determining its scope on a transactional, case-by-case basis.

While various courts have deferred to the footnote with little or no discussion, the only circuit court to address § 404(c) found its meaning tolerably plain and explained that the provision "allows a fiduciary, who is shown to have committed a breach of duty in making an investment decision, to argue that despite the breach, it may not be held liable because the alleged loss resulted from a participant's exercise of control." In re Unisys Sav. Plan Litig., 74 F. 3d 420, 445 (3rd Cir. 1996). Unisys predated the DOL

20

regulations but embodies a common sense interpretation of the statute.[23]

Disregarding the footnote and relying solely on the statute and the regulation does not, as the district court and Appellees fear, leave plan participants without a remedy for the type of fiduciary duty breaches alleged here. Instead, it correlates the potential recovery with the sum of participants' decisions regarding their individual accounts. The Plan "as a whole" is not entitled to recover money damages for breach where an individual participant, suing on his own behalf, could not recover. The district court implicitly recognized this limitation in holding that with respect to the misrepresentation claims, which it did not certify for class treatment, § 404(c) affords an individual a transactionally oriented defense. Put otherwise, the § 404(c) defense is no different from a limitations defense in a class action. A classwide claim may be stated, but the potential recovery is limited to those class members whose claims have not prescribed. Moreover, § 404(c) in no way limits the recovery of equitable relief.

The dissent fears that if a § 404(c) defense applies, Plan participants and beneficiaries will be left "at the mercy of the wisdom of whoever made these limited [plan investment]

_____

[23] See also, Wiseman, supra, where the court noted that individual assessments of § 404(c) defenses were required where, despite plan managers' alleged fiduciary duty breach, some participants had made deliberate decisions to hold onto declining stocks.

21

choices." The dissent is also concerned that no duty of prudence will attach to the selection and monitoring of plan investment choices if § 404(c) is applied as written. These fears are both overblown and misdirected. Principally, we are not holding that a plan fiduciary's duties do not include the selection and monitoring of plan investment alternatives. The question, rather, is how to harmonize the enforcement of the fiduciary's duty with the § 404(c) defense when a § 502(a)(2) action is pursued "on behalf of the plan." A plan fiduciary may have violated the duties of selection and monitoring of a plan investment, but § 404(c) recognizes that participants are not helpless victims of every error. Participants have access to information about the Plan's investments, pursuant to DOL regulations, and they are furnished with risk-diversified investment options. In some situations, as happened here, many of the Participants will react to the company's bad news by buying more of its stock. Other Participants will, like Mizell, trade their way to profit no matter the calamity that befell the stock. Section 404(c) contemplates an individual, transactional defense in these situations, which is another way of saying that in participant-directed plans, the plan sponsor cannot be a guarantor of outcomes for participants.

If the Appellees' negation of § 404(c) prevails, then the EDS fiduciaries would be liable not just for losses in individual accounts, but also for failures to realize gains (measured against

22

some entirely speculative standard) and even for catch-up amounts where participants <u>bought</u> <u>into</u> a declining EDS stock value.

The harmonization of § 502(a)(2) actions with the § 404(c) defense, however, limits the amount of "plan losses" for which a fiduciary may be held liable. This harmonization also bears on the susceptibility of this case to class action treatment, because § 404(c) individualizes the consequences of fiduciary duty violations. Finally, there is no inconsistency between this harmonization and the courts' decisions in the Enron and Worldcom cases, because in those cases, where the company's stock value ultimately rested on a financial house of cards, no trading strategy in the company's stock could have salvaged a participants' company stock ownership.[24]

Because the district court incorrectly eliminated the § 404(c) defense from its evaluation of the suitability of the allegations on appeal for class treatment, we must vacate and remand for further consideration of the extent to which § 404(c) decisions by participants undermine the feasibility of class action treatment.

**C.    Participant Releases.**

---

[24]    Finally, contrary to the dissent, while we "agree that § 404(c) provides no shield" for the two-year retention of matching contributions in EDS stock, that match cannot be the subject of any ERISA fiduciary duty violation if the requirement embodied a settlor decision, not a decision subject to the fiduciaries' discretion. The issue has not been briefed before us, the district court did not decide it, and we do not speculate on its resolution.

23

While conceding that ordinarily the fact that up to nine thousand potential class members have signed releases of claims against EDS would defeat typicality and preclude class certification, the district court found a distinction here for two reasons. First, the court determined that the releases (which are otherwise quite broad, discharging "all claims or demands" against EDS) authorize the instant suit as one for "benefits."[25] Appellants contend, with some force, that this exception only permits suits under ERISA § 502(a)(1)(b) to recover specific benefits owed a participant under the terms of an employee plan. As the Supreme Court explained in <u>Russell</u>, ERISA § 502(a)(1)(b) allows a beneficiary to recover plan "benefits," whereas § 502(a)(2) allows recovery that inures to the benefit of the plan as a remedy for breach of fiduciary duties. <u>Russell</u>, 473 U.S. at 146-47, 105 S. Ct. at 3093; <u>see</u> <u>also</u> <u>Rhorer v. Raytheon Eng'rs & Constructors, Inc.</u>, 181 F.3d 634, 639 (5th Cir. 1999) (noting the numerous differences between causes of action under §§ 502(a)(1)(b) and 502(a)(2)). On the other hand, a release does not ordinarily preclude claims based on subsequent conduct. The enforceability of the releases presents difficult questions.

---

[25] The pertinent language in the releases states:

This Release does not include, however, a release of Employee's right, if any, to benefits he/she is entitled to under any EDS plan qualified under Section 401(a) of the Internal Revenue Code, including the EDS Retirement Plan and the EDS 401(k) Plan, and COBRA benefits pursuant to Internal Revenue Code section 4980B.

24

Additionally, the district court refused to consider individual releases pertinent to the maintenance of a derivative suit on behalf of the Plan. For the reasons stated in regard to the § 404(c) defense, however, this conclusion is untenable. The impact of the releases should not have been excluded from the district court's certification analysis.

Without commenting further on the enforceability of the releases or application of the "benefits" exception, we note that holders of releases could become a subclass if a class action is otherwise deemed appropriate. Contrary to the dissent, we are not holding that the releases foreclose any § 502(a)(2) suit on behalf of the Plan or foreclose any class certification. We do stress, however, that the status of perhaps nine thousand claimants is not a trifle — either to the Appellants or the claimants themselves. The district court must consider the releases more thoroughly on remand.[26]

**D.   Class Action Issues.**

Applying the § 404(c) defense and factoring in the nine thousand releases may well change the district court's decision to certify a class action. Nevertheless, we must also address the two

---

[26]   Even if, as the dissent suggests, the effect of the releases may be considered on a classwide basis, the named Plaintiffs may not be adequate representatives of those class members who did sign them. See JAYNE E. ZANGLEIN & SUSAN J. STABILE, ERISA LITIGATION 479-80 (2d ed. 2005)("[C]ourts have regularly found standing, typicality, or adequacy lacking where the defense of a release of claims was not shared by the named plaintiffs and the purported class. . . . [I]f none of the named plaintiffs signed releases, they are inadequate representatives because none of them would have any need to litigate or interest in litigating the release issue.")

Rule 23(a) class certification issues challenged directly by Appellants — typicality of the representative Plaintiffs' claims and adequacy of their representation — as well as the court's ultimate authorization of a Rule 23(b)(1) and (2) no-notice, no-opt-out class action. We conclude that Smith and Mizell hold sufficiently typical claims, but the court must reconsider whether they are adequate representatives in light of inherent intraclass conflicts. Finally, various difficulties demonstrate the impropriety of maintaining a Rule 23(b)(2) class action and the court's superficial analysis of the Rule 23(b)(1) alternative.

## 1. Typicality.

Rule 23(a) requires that the named representatives' claims be typical of those of the class. Appellants question whether Smith's and Mizell's claims are typical because Mizell continued to invest in EDS stock even after it declined following the September 18th disclosures, and Smith actually made money on his EDS investments (although not as much as he thinks he should have). The district court ruled these inquiries inappropriate since the representatives' derivative claims on behalf of the Plan transcend individual claim variations. On the contrary, the requirements of Rule 23(a) cannot be waved away by artful characterization. Even if the typicality requirement did not apply, Smith and Mizell would have the burden to prove, as

26

derivative representatives of the Plan, that their claims fairly represent those of the absent Participants.

Stated broadly, the representatives' claims are typical of those of the class. Smith and Mizell both allege that they suffered harm as Participants who lost money on EDS stock investments through the Appellants' imprudent Plan management. The fact that Mizell continued to trade in EDS stock after the company's adverse disclosures may signify an intraclass conflict of interest and may cut against his attempt to avert a § 404(c) defense, but it does not disable him from being a typical class representative. This court recently noted that "the key typicality inquiry is whether a class representative would be required to devote considerable time to rebut Defendants' claims." Feder, 429 F.3d at 138 (quoting Lehocky v. Tidel Techs., 220 F.R.D. 491, 501-02 (S.D. Tex. 2004). Feder went on to join numerous decisions which have held that securities class action plaintiffs are not categorically precluded from asserting typical claims despite their own post-disclosure trading in the target defendant's stock. Id. Such trading becomes harmless where, after the company has made adverse disclosures, the stock price reverts to valuation based on an efficient market. The analogy between securities fraud and ERISA fiduciary violation plaintiffs is inexact, as Appellants point out, in the face of Mizell's contentions that even after the September 18th disclosures, EDS stock remained an imprudent Plan investment. A trading strategy adopted for Mizell's personal

27

benefit is, however, distinguishable from the Plan fiduciaries' execution of their duties. Similar reasoning vindicates Smith's claim to typicality, reducing Appellants' complaint over his profit to questions of damages and the § 404(c) defense.

## 2. Adequacy.

In addition to measuring the competence of class counsel and the class representatives' willingness and ability to serve, neither of which criteria are challenged here, the Rule 23 adequacy inquiry also uncovers "'conflicts of interest between the named plaintiffs and the class they seek to represent.'" Berger v. Compaq Computer Corp., 257 F.3d 475, 479-80 (5th Cir. 2001) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625, 125 S. Ct. 2231, 2236 (1997)).

Substantial conflicts exist among the class members, raising questions about the adequacy of the lead Plaintiffs' ability to represent the class. Even after the EDS earnings warning and the drop in its stock price, thousands of Plan Participants (would-be class members), including Mizell, continued to direct money into the EDS Stock Fund. Over forty-four thousand Participants maintained investments in EDS stock as of February, 2004. This aggregate conduct seriously undermines the claim that the EDS Stock Fund was an imprudent investment that Appellants should not have offered in the first place. The intraclass conflict is exacerbated because Appellants seek injunctive relief

that would dissolve the EDS Stock Fund;[27] the Fund cannot be partially shut down for the litigating Plaintiffs and remain open for absent class members who desire this investment option.

Additionally, Plan Participants were affected by the drop in price in dramatically different ways. Class discovery revealed that Smith and sixteen thousand absent class members made money on their stock fund investments, while others, including Mizell, lost money. Further conflicts exist among those who lost money. According to David Ross's report, for 17,890 class members, maximum recovery would inure to the Plan (and eventually be allocated to their accounts) if February 4, 2000, is established as the date on which the stock fund became an imprudent investment. For 37,689 class members, maximum recovery would be attained if November 27, 2001, were the designated date. Appellees dismiss these concerns by asserting that all Plan Participants share the goal of attaining maximum payment to the Plan, regardless of the designated date. This is true as a general matter and surely promotes the interest of the class representatives and their counsel. Appellees gloss over the inconvenient fact that these conflicts have implications not only for dividing the pie at recovery but also for discovery and preparation for trial. Unlike a securities fraud lawsuit, in which class members have a uniform purpose in proving material

---

[27] More pointedly, even if Appellees prevail without receiving an injunction, their assertion that the mere existence of the EDS Stock Fund violated a fiduciary duty under ERISA will have won the day. It is hard to imagine that the Fund would continue to exist after such a finding.

misrepresentations by company defendants at specific points in time, here the goal is to second-guess judgments made by the Appellants involving a multitude of considerations over a period of years. The facts, once known, may bear out different legitimate theories as to when EDS Stock Fund became an imprudent investment; each theory will have different consequences for class members' recovery.

Numerous courts have held that intraclass conflicts may negate adequacy under Rule 23(a)(4). See Valley Drug Co. v. Geneva Farms, Inc., 350 F.3d 1181, 1189-92 (11th Cir. 2003) (finding class representatives inadequate where their economic interests and objectives conflicted substantially with those of absent class members); Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir. 2000)(representation inadequate where class includes those "who claim harm from the very acts from which other class members benefitted").

The trial court too readily succumbed to Appellees' minimization of the intraclass problems in this case.[28] That the court recognized a fiduciary would need to be appointed to allocate

---

[28] Indeed, intraclass problems can present problems of constitutional magnitude. See Hansberry v. Lee, 311 U.S. 32, 43-44 61 S. Ct. 115, 119-120 (1940). The dissent's suggestion that although "some members may not want EDS stock removed as an investment alternative [this] does not present a conflict" is not far from saying that the fact that the Hansberry family did not want to enforce the covenant barring blacks from living in their neighborhood does not present a class conflict with those who sought, through a class action judgment, to enforce the covenant against them. A few class members cannot hijack litigation "on behalf of the plan" to pursue their preference at the expense of others who are not given notice of this purported representation. The interests of all class members must be fundamentally consistent.

30

recovery among Plan Participants concedes at least the possibility of intraclass apportionment problems. The problem goes to the heart of proving the allegations of fiduciary imprudence. On remand, the district court must more fully consider the implications of the proven intraclass conflicts for the adequacy of representation by Smith and Mizell. If a class is certified, the court may have to consider certifying subclasses to represent the participants with conflicting interests.

### 3. The <u>Allison</u> Rule 23(b)(2) Inquiry.

With little difficulty, the district court concluded that because Plaintiffs' derivative lawsuit was filed on behalf of the Plan and sought "predominately" equitable remedies, it should be certified as a class pursuant to Rule 23(b)(2). The court did not afford absent class members the option of notice or self-exclusion from the class. Certification of a class under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). The district court cited this court's decision in <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402 (5th Cir. 1998), which held that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." <u>Id.</u> at 415. This <u>Allison</u> (b)(2) predominance

requirement, "by focusing on uniform relief flowing from defendants' liability, 'serves essentially the same functions as the procedural safeguards and efficiency and manageability standards mandated in (b)(3) class actions.'" In re Monumental Life Ins. Co., 365 F.3d 408, 417 (5th Cir. 2004) (quoting Allison, 151 F.3d at 414-15).[29]

Allison also imposed standards for determining whether monetary relief sought in a Rule 23(b)(2) class action is truly incidental, or whether such relief is the true pursuit of the class action:

> Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.

Allison, 151 F.3d at 415 (internal citations omitted). Allison's test has been cited in connection with other ERISA class action determinations. See Nelson v. Ipalco Enters. Inc., No. 1P02-477CHK, 2003 WL 2310192 (S.D. Ind. Sept. 30, 2003) (unpublished).

---

[29] "Allison reflects our concern that Plaintiffs may attempt to shoehorn damage actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out protections." Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 976 (5th Cir. 2000).

Two considerations persuade us that the district court got it backwards. This court has refused to permit certification of a class where many members "have nothing to gain from an injunction, and the declaratory relief they seek serves only to facilitate the award of damages." Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 978 (5th Cir. 2000). As just noted, many potential class members have voted with their investments to remain in the EDS Stock Fund and, inferably, do not want it closed; other potential class members profited from stock swings caused by the alleged fiduciary violations; and still other potential class members would gain or lose damages based on the breach date selected by the court. In light of these real, not simply alleged, problems caused by such conflicts, the inability of absent class members to receive notice of this suit or have an opportunity to opt out is extremely troubling.

Second, to effectuate Appellees' principal goal — reimbursement into the individual accounts of each Plan Participant — numerous individualized hearings would be required. Final resolution of class members' claims will involve "new and substantial legal and factual issues," Allison, 151 F.3d at 415, including the § 404(c) defense, whether an individual class member was actually harmed by the purported breaches of fiduciary duty, and the releases. Resolution of these claims will require "complex individualized determinations," Allison, 151 F.3d at 415. Again, the district court's acknowledgment that a fiduciary would have to

33

sort out the claims of individual class members demonstrates how little the "incidental damages" (which would total many millions of dollars) will "be more in the nature of a group remedy," as <u>Allison</u> intended. See <u>id.</u>

The inappropriateness of Rule 23(b)(2) in this case is strongly supported by the court's decision in <u>Nelson</u>, which states:

> Relief will depend on individualized calculations for each account. As noted, individual claimants may present issues of causation and reliance, so that a classwide determination that defendants violated ERISA's requirements would not necessarily lead to an award in favor of a particular claimant. Also, defendants may be able to raise individual defenses regarding each class member. Thus, monetary relief here would not "flow directly from liability to the class as a whole." Certification under Rule 23(b)(2) is not available here.

<u>Id.</u> at * 11.

It may be objected that because Plaintiffs' suit is characterized as a derivative action on behalf of the Plan, resort to the Rule 23 class action requirements is not mandated, and Rule 23(b)(2) best represents a compromise between the derivative nature of the claims and the ultimate relief that may be granted in individual Participants' accounts. Lower court cases are in fact divided over which provision of Rule 23 applies. <u>Compare</u> <u>Piazza v. EBSCO Indus., Inc.</u>, 273 F.3d 1341, 1352-53 (11th Cir. 2001) (abuse of discretion for the district court to certify a (b)(3) class) <u>with</u> <u>Coan v. Kaufman</u>, 349 F. Supp. 2d (D. Conn. 2004)(". . . Courts . . . have nonetheless applied the procedural safeguards of either Rule 23 or Rule 23.1 in order to protect the plan and absent participants.") (citing cases). Perhaps no general procedural rule

34

can be enunciated. In this case, we are confident that the subtlety of the fiduciary claims alleged, the intraclass conflicts and the individualized nature of potential defenses mandated that the case proceed as a class action and equally mandated, on the facts before us, against the propriety of a Rule 23(b)(2) class. On remand, after further consideration, the court may adduce sufficient grounds to approve a class pursuant to the standards this court has developed.

**4. Rule 23(b)(1).**

The district court also purported to certify a class under Rule 23(b)(1). Although certification must be reversed under Rule 23(a), we point out the court's cursory Rule 23(b)(1) analysis in the interest of judicial efficiency and to provide guidance on remand. See United States v. Murillo-Lopez, 444 F.3d 337, 339 & n.5 (5th Cir. 2006).

Numerous courts, like the district court, have conclusionally declared that a (b)(1) class is appropriate in an ERISA lawsuit "on behalf of the plan." Of course, a Rule 23(b)(1)(B) limited fund class action is plainly not appropriate. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 119 S. Ct. 2295 (1999). What the court evidently meant was a certification under Rule 23(b)(1)(A), which authorizes a class action where the party opposing the class would be subject to "incompatible standards" if separate actions were brought. Such a remedy has some intuitive

35

appeal to the extent that Plaintiffs here seek equitable relief: A judgment removing the fiduciaries in one lawsuit would be inconsistent with a judgment in another permitting them to stay. On the other hand, as even the dissent recognizes, achieving injunctive relief is not the principal goal of this litigation.[30] The focus on monetary damages would set this case apart from the examples of classic Rule 23(b)(1) class actions, which are based on situations "in which different results in separate actions would impair the opposing party's ability to pursue a uniform course of conduct." C.WRIGHT, A.MILLER, & M.KANE, 7A FEDERAL PRACTICE & PROCEDURE § 1773, at 16 (2005 ed.).

If the district court eventually reaches a Rule 23(b) analysis, it should consider the extent to which the due process concerns inherent in <u>Allison</u> apply to a (b)(1)(A) class and whether a (b)(1)(A) class can be maintained if damages are the primary remedy sought. <u>See</u> <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1193-95 (9th Cir. 2001). The resolution of these issues is still uncertain in the Fifth Circuit. What seems fairly clear is that depriving tens of thousands of EDS shareholders of notice and opt-out protections, where there are undeniable intraclass conflicts pertinent to significant monetary outcomes,

---

[30] The dissent contends that no intraclass conflict exists with respect to the class members' competing views on injunctive relief since the propriety of injunctive relief will be determined at the end of litigation and an injunction may be unnecessary.

would create an unacceptable risk of unfair treatment of class members.[31]

### III. CONCLUSION

For the foregoing reasons, the class certification by the district court is VACATED and REMANDED. The court may reconsider its class certification pursuant to the standards discussed herein.

**VACATED AND REMANDED.**

---

[31]    The Eleventh Circuit decision in <u>Piazza v. Ebsco Indus., Inc.</u>, 273 F.3d 1341 (11th Cir. 2001), certified a Rule 23(b)(1)(A) class action to redress fiduciary duty breaches to an ERISA plan pursuant to § 502(a)(2), but no intraclass conflicts were asserted against the maintenance of the class or as a basis for questioning the denial of notice and opt-out.

REAVLEY, J., Circuit Judge, dissenting:

I would affirm the order certifying the class action. The majority decides that plaintiffs must return to the district court for further pondering of whether Title 29 U.S.C. § 1104(c)(1) relieves the fiduciary of liability, that certification under Rule 23 (b)(2) would be inappropriate because of conflict between members of the class, and that Rule 23(b)(1) is "conceptually unclear." As I understand the opinion, it misapplies § 1104(c)(1), reflects an incorrect view of conflict, and ignores the unique applicability of Rule 23(b)(1) in this case.

A. <u>Control Over Assets</u>

EDS employees could choose among a dozen or more options, including an EDS stock fund, for investment of their plan contributions. Matching plan contributions made by the company on the employees' behalf were mandatorily invested in the EDS stock fund, where they were required to remain for two years. In this suit, the employees who selected the EDS stock fund sue for fiduciary imprudence in affording them that option, but the majority holds that the statute and regulations count the

38

employee selection of the EDS option to be control of assets that absolves the fiduciary of liability.

Title 29 § 1104(c)(1) (also ERISA § 404(c)[1]) provides in relevant part that "[i]n the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account [then] no person who is otherwise a fiduciary shall be liable [] for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." The statute further provides that the circumstances in which a participant or beneficiary is considered to have exercised independent control over assets in his account as contemplated by § 404(c) are to be determined under regulations of the Secretary of the Department of Labor ("DOL"). Id. at (c)(1). The agency's regulations describing those circumstances, and the consequences of a participant's or beneficiary's exercise of control are set forth at 29 C.F.R. § 2550.404c-1. Under these regulations, in order to qualify for relief from fiduciary liability, plans must meet certain

---

[1] The majority and many writers use the ERISA § 404(c) designation and I will do so hereafter.

39

general requirements, including provision of sufficient investment information and disclosure of material facts. 29 C.F.R. §§ 2550.404c-1(b)(2)(B), (c)(2)(ii) (2004). The EDS plan's full compliance with these requirements is, at this stage, undetermined.

For present purposes, we need not consider questions about what information the law requires a fiduciary to give participants about investments in a selected stock option, but I would hold that imprudent designation of an option for participants to choose constitutes grounds for fiduciary liability, and falls outside the scope of participant control envisaged by § 404(c). That is the position of the Department of Labor, of the commentators, and of the case law.

The DOL regulation provides that a plan fiduciary will not be liable for any loss that "is the direct and necessary result of [a] participant's or beneficiary's exercise of control." 29 C.F.R. § 2550.404c-1(d)(2)(i)(2004). The DOL has made clear that § 404(c) does not relieve fiduciaries of their prudence duty in selecting and monitoring plan investment options. See Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans), 57 Fed. Reg. 46906-01, 1992 WL 277875 (Oct. 13, 1992). (General preamble, n.27)

40

("[T]he Department points out that the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant direction of such plan.") (emphasis added). The DOL has consistently reiterated this interpretation.[2]

An agency's reasonable interpretation of its own regulation is entitled to the highest deference under Chevron U.S.A., Inc. v. National Resource Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984).[3] The majority says the DOL's preamble is entitled to deference only to the extent it has power to persuade, citing Louisiana Environmental Action Network v. EPA, 382 F.3d 575 (5th Cir. 2004), where we held that an interpretation set forth in the preamble of a proposed

---

[2]   See, e.g., DOL Advisory Opinion No. 98-04A, 1998 WL 326300, at *1, *3 n.1 (May 28, 1998);  DOL Advisory Letter, 1997 WL 1824017, at *2 (Nov. 26, 1997), amicus briefs in this case and in In re Enron Corp. Securities, Derivative & ERISA Litig., 284 F. Supp. 2d 511 (S.D. Tex 2003) and In re Schering-Plough Corp. ERISA Litig., 420 F.3d 231 (3d Cir. 2005).

[3]   See Auer v. Robbins, 519 U.S. 452, 457, 117 S. Ct. 905, 909 (1997);  Wells Fargo Bank of Texas N.A. v. James, 321 F.3d 488, 494-95 (5th Cir. 2003).

regulation, which had not yet been subjected to formal notice-and-comment rulemaking, was entitled to less than Chevron, deference.   Id. at 583.   But here the statute expressly delegated to the agency the task of promulgating a regulation governing when a participant will be viewed as having exercised independent control over the assets in his or her account for the purposes of § 404(c) relief from fiduciary liability.  See 29 U.S.C. § 1104(c)(1).

The DOL's interpretation, as quoted above, was contained in the preamble to a revised version of the proposed § 404(c) regulation, which was promulgated and noticed in March 1991. See Participant Directed Individual Account Plans, 56 Fed. Reg. 10724-01, 1991 WL 301434 (Mar. 31, 1991).  This version of the regulation was the subject of further comment, and the final regulation, containing the same interpretative passage in the preamble, was adopted in October 1992.  See Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 40(c) Plans), 57 Fed. Reg. 46906-01, 1992 WL 277875 (Oct. 13, 1992).  The DOL's interpretation of the final notice-and-comment regulation as preserving the fiduciary's duty to prudently select and monitor the plan investment options, which was published in the federal register and uniformly adhered to

42

in numerous public pronouncements, is entitled to controlling weight to the extent that it is reasonable.

The DOL's interpretation of its own § 404(c) regulation is reasonable. Section 404(c) need not be read to shield fiduciaries from liability for including an imprudent investment option on the investment menu in a self-directed plan. By allowing plans to limit their universe of investment choices and still be considered 404(c) plans, the DOL left participants and their beneficiaries at the mercy of the wisdom of whoever made these limiting choices. There should be some assurance that these limited investment choices will be prudently selected. If no duty of prudence attaches to selection of investment options, plan fiduciaries could imprudently select a full menu of unsound investments, among which participants would be free to choose at their peril, while the fiduciaries remain insulated from responsibility. The DOL was within its delegated authority in deciding not to offer relief for the decision to offer a plan investment option.

All commentators recognize that § 404(c) does not shift liability for a plan fiduciary's duty to ensure that each

43

investment option is and continues to be a prudent one.[4]

[4]    See, e.g., 1 MICHAEL J. CANAN, QUALIFIED RETIREMENT PLANS § 16.28 (2006 ed.) ("[T]o some degree, fiduciary liability remains for selection of the investment choices."); Paul J. Donahue, Plan Sponsor Fiduciary Duty for the Selection of Options in Participant-Directed Defined Contribution Plans and the Choice Between Stable Value and Money Market, 39 AKRON L. REV. 9, 12 (2006) ("Selection of a [directed contribution] Plan's investment options remains a fiduciary function, and Plan Sponsors must choose those investment options knowledgeably and thoughtfully."); 1 RONALD J. COOKE, ERISA PRACTICE AND PROCEDURES §6:30 (2d ed. 1996 & Supp. 2004)("ERISA Section 404(c) does not relieve plan fiduciaries of the responsibility for determining whether it is appropriate to offer employer stock as an investment option under the Plan."); MICHAEL B. SNYDER, 3 COMPENSATION & BENEFITS (HR Series) § 33.138 (2006) ("Plan fiduciaries of ERISA § 404(c) plans remain responsible for . . . prudently selecting and monitoring plan investment alternatives."); Debra A. Davis, Do-it-Yourself-Retirement: Allowing Employees to Direct the Investment of Their Retirement Savings, 8 U. PA. J. LAB. & EMP. L.— 353, 377 (2006) (recognizing that plan "fiduciaries remain responsible for prudently selecting and monitoring investments" even if the plans comply with section 404(c)); David W. Powell, The Public Company ESOP in 2004, 30 J. PENSION PLANNING & COMPLIANCE 70 (Sept. 30, 2004) ("[T]he fiduciary will remain responsible for whether it is prudent for the investment in question to be offered."); Kathleen Sheil Scheidt & David L. Wolfe, Prudence and Diversification Revisited — ERISA Section 404(c) Protection in the Wake of Enron, EMP. BENEFITS J. (March 2003) ("Even if a plan fully complies with ERISA Section 404(c), the plan fiduciaries retain responsibility for selecting the investment alternatives to be offered under the plan and monitoring the performance and costs of those alternatives to ensure that they remain prudent investment alternatives. This includes periodic analysis of the prudence of retaining employer stock as an investment alternative it is available under the plan."); 1 JEFFREY D. MAMORSKY, EMPLOYEE BENEFITS LAW § 12.05 (2002) ("It is important to note, however, that even if Section 404(c) applies, the mere selection of an investment alternative in a plan which limits options is a fiduciary decision and accordingly the fiduciary will remain potentially liable for

Further, the majority of courts that have considered the issue have held that, even if a plan otherwise qualifies as a § 404(c) plan, the fiduciary retains the duty to prudently select and monitor investment options such that § 404(c) does not provide an absolute defense to breach claims.[5]

---

the selection of the investment alternatives."); Morton A. Harris, <u>Working with Participant Directed Investments Under ERISA § 404(c)</u>, SG008 ALI-ABA (July 2001) ("ERISA section 404(c) does not relieve a fiduciary from liability in choosing the investment alternatives made available to participants and beneficiaries under the plan nor in determining whether or not to retain existing investment alternatives. In other words, a plan fiduciary can never avoid potential liability for negligence in picking the investments which constitute the 'menu' of investment alternatives made available to participants . . ."); STEVEN J. SACHER, EMPLOYEE BENEFITS LAW 696 (2d ed. 2000) (selection of investment alternatives remains a fiduciary function in a 404(c) plan); Frederick Reish and Bruce L. Ashton, <u>ERISA Section 404(c): Shifting Fiduciary Liability in Participant-Directed Retirement Plans</u>, PENSION & BENEFITS WEEK NEWSLETTER, Vol. 4, No. 3, January 12, 1998 ("[T]he responsibility for choosing and monitoring the investment options — as opposed to participants choosing among a pre-selected menu of investment options — cannot be transferred to the employees. . . . In selecting the investment options, the responsible fiduciary must act prudently and is liable for losses resulting from an imprudent decision. . . . In addition to the initial selection of the investment options, the responsible fiduciary must monitor the options to ensure that they continue to be a prudent choice for the plan.") (internal quotation and citation omitted); RIA Pens. Analysis P 54,204 (2006) ("[F]iduciaries are not relieved of other obligations in dealing with § 404(c) plans. For example, fiduciaries must continue (subject to liability for failure) to [inter alia] prudently select investment alternatives . . .").

[5] <u>See, e.g.</u>, <u>DiFelice v. U.S. Airways, Inc.</u>, 397 F. Supp. 2d 758, 774-78 (E.D. Va. 2005); <u>In re Dynergy, Inc.</u>

The majority relies heavily on the Third Circuit's decision In re Unisys Sav. Plan Litigation, 74 F.3d 420 (3d Cir. 1996), for its conclusion to the contrary. Unisys concerned events occurring before the DOL's § 404(c) regulation became effective. Although some of the Unisys court's conclusions regarding the scope of the authorizing ERISA statute, 29 U.S.C. § 1104(c), are similar to those contained in the § 404(c) regulation, neither that regulation nor the DOL's interpretation were directly addressed. 74 F.3d at 444 n.21 ("As the regulation [29 C.F.R. § 2550.404c-1] was not in effect when the transactions at issue occurred, it does not apply or guide our analysis in this case."). As courts have recognized, Unisys and subsequent opinions that rely upon it should not be considered controlling, particularly in light of the DOL's consistent contrary interpretation. See e.g., DiFelice v. US. Airways, Inc., 404 F. Supp. 2d 907, 909-10 (E.D. Va. 2005) (finding Unisys unpersuasive and noting that

ERISA Litig., 309 F. Supp. 2d 861, 893-94 (S.D. Tex. 2004); In re Enron Corp. Securities, Derivative & ERISA Litig., 284 F. Supp. 2d 511, 574-79 (S.D. Tex. 2003); Rankin v. Rots, 278 F. Supp. 2d 853, 873 (E.D. Mich. 2003); In re Worldcom, Inc. ERISA Litig., 263 F. Supp. 2d 745, 763-65 (S.D.N.Y. 2003); Franklin v. First Union Corp., 84 F. Supp. 2d 720, 732 (E.D. Va. 2000) (holding that plan fiduciaries are responsible for selecting and removing their plans' investment options when the plans comply with section 404(c)).

"every court to consider this issue with the benefit of the DOL regulation" had agreed with the DOL interpretation).

Holding plan fiduciaries responsible for imprudent choice of a limited set of options does not, as EDS suggests, make it a guarantor of participant investment returns. Plaintiffs allege here that EDS stock had defects beyond mere riskiness and that it was imprudent to offer it as an investment option for anyone. Whether or not plaintiffs can prove that allegation remains to be seen, but that is not before us at this stage. Of course, it cannot be disputed that § 404(c) provides no shield for the fiduciaries' investment and mandatory two-year retention of the matching contributions in company stock, a decision guided by no participant direction whatsoever.[6]

---

[6] I could not equate the mandatory retention as a settlor decision free of fiduciary responsibility. In this specific regard, the DOL has clearly stated that "the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant direction of such plan." 57 Fed. Reg. 46,906 at 46,924 n.27. The DOL has consistently maintained its position that plan fiduciaries have the duty to decline to follow the terms of the plan documents where those terms require them to invest participants' funds in an imprudent investment vehicle — even, and perhaps especially, where that required investment is in company stock. See, e.g, DOL Amicus Brief in Kirschbaum

<u>v. Reliant</u>, Case No. 06-20157 (appeal pending 5th Cir. 2006); DOL Op. Letter No. 90-05A, 1990 WL 172964, *3 (Mar. 29, 1990).

Indeed, we have recognized that, even in the context of ESOPs, which are designed to be primarily invested in employer securities, "ESOP fiduciaries remain subject to the general requirements of [s]ection 404." <u>Donovan v. Cunningham</u>, 716 F.2d 1455, 1467 (5th Cir. 1983). Those requirements include the duty to reconsider a potentially imprudent investment option, even if it is specified in the plan documents. <u>See</u> ERISA § 404(a)(1)(B) (requiring that plan fiduciaries exercise prudence "solely in the interest of the participants and beneficiaries"), and ERISA § 404(1)(D) (stating that a fiduciary may only follow plan terms to the extent that the terms are consistent with ERISA).

Most courts to address the issue have recognized that fiduciaries for plans that hold employer stock (both ESOPs and non-ESOP plans) are therefore obligated to consider whether it continues to be prudent to invest in employer stock, and they may continue to follow plan terms requiring such investment only if prudent to do so. <u>See</u>, <u>e.g.</u>, <u>Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.</u>, 173 F.3d 313, 322 (5th Cir. 1999); <u>Kuper v. Iovenko</u>, 66 F.3d 1447, 1457 (6th Cir. 1995); <u>Fink v. Nat'l Sav. & Trust Co.</u>, 772 F.2d 951, 954-55 (D.C. Cir. 1985); <u>Agway, Inc. Employees' 401(k) Thrift Investment Plan v. Magnuson</u>, No. 5:03-CV-1060, 2006 WL 2934391 at *18 (N.D.N.Y. Oct. 12, 2006); <u>Merck & Co., Inc. Sec. Derivative & ERISA Litig.</u>, No. 05-2369, 2006 WL 2050577 at *7 (D.N.J. July 11, 2006); <u>In re Ferro Corp. ERISA Litig.</u>, 422 F. Supp. 2d 850, 859 (N.D. Ohio 2006) ("a fiduciary is not required to blindly follow the terms of a plan if doing so would be imprudent."); <u>In re CMS Energy ERISA Litig.</u>, 312 F. Supp. 2d 898, 907-08 (E.D. Mich. 2004); <u>In re Polaroid ERISA Litig.</u>, 362 F. Supp. 2d 461 473 (S.D.N.Y. 2005); <u>In re Sprint Corp. ERISA Litig.</u>, 388 F. Supp. 2d 1207, 12,18-25 (D. Kan. 2004); <u>In re Xcel Energy, Inc. Sec. Derivative & "ERISA" Litig.</u>, 312 F. Supp. 2d 1165, 1181 (D. Minn. 2004); <u>In re Worldcom</u>, 263 F.Supp.2d 745, 764-65 (S.D.N.Y. 2003); <u>In re Enron Corp. Sec. Derivative & "ERISA" Litig.</u>, 284 F. Supp. 2d 511, 548-49 (S.D. Tex. 2003); <u>In re Ikon Office Solutions, Inc. Sec. Litig.</u>, 86 F. Supp. 2d 481, 492-93 (E.D. Pa. 2000); <u>Canale v. Yegen</u>, 789 F. Supp. 147, 154 (D.N.J. 1992); <u>Ershick</u>

48

B.   <u>Intra-class Conflict</u>

Beyond the § 404(c) dispute, I do not believe the fact that a portion of the plan participants signed general releases upon departing the company's employ precludes class certification.  I find no fault with the district court's conclusion that these releases do not extend to the plan participants' right to recoup plan benefits and agree that, even if this conclusion is incorrect, no individual participant can unilaterally release the rights of other participants to derivatively seek recovery on behalf of the plan under § 502(a)(2).  <u>See</u>, <u>e.g,</u> <u>Bowles v. Reade</u>, 198 F.3d 752, 759-61 (9th Cir. 1999) (rejecting the argument that settlement of a participant's breach of fiduciary claims against a defendant released the plan's claims against that defendant).  The dispute over the breadth of the release can be resolved on a class-wide basis and, whether or not these releases preclude the relatively small percentage of signing participants from receiving allocation of any recovered plan assets, this does not deny class certification.

Further, the fact that some individual participants may gain from allocation of any recouped plan assets and some may

_____

<u>v. Greb X-Ray Co.,</u> 705 F. Supp. 1482, 1486-87 (D. Kan. 1989).

49

not does not present a conflict.  All courts that have considered the issue, including this one, have rejected arguments that a § 502(a)(2) ERISA action must allege harm to all of a plan's individual participants.[7]  To hold that variances among allocation present a class conflict is a back-door avoidance of this universal conclusion.  In short, the possibility that individualized benefit determinations will be required is insufficient to bar class certification.

Further, because the plaintiffs are suing under section 502(a)(2) on behalf of the plan, it is not material whether or not individuals lost money or had access to investment information regarding EDS stock that might have prevented them from doing so.  The loss causation issue is whether the defendants caused <u>a loss to the plan</u> (ERISA § 409(a), 29 U.S.C.

---

[7]      See <u>Milofsky v. American Airlines, Inc.</u>, 442 F.3d 311, 313 (5th Cir. 2006) (subset of participants not precluded from bringing breach of fiduciary duty claims under ERISA sections 502(a)(2) and 409(a) where remedy would not benefit all participants);  <u>In re Schering-Plough Corp. ERISA Litig.</u>, 420 F.3d 231, 239-41 (3d Cir. 2005) (derivative action under § 502(a)(2) was available to a subset of participants to recover losses sustained to plan by breaches of fiduciary duty);  <u>Kuper v. Iovenko</u>, 66 F.3d 1447, 1452-53 (6th Cir. 1995);  <u>In re CMS ERISA Litig.</u>, 225 F.R.D. 539, 543 (E.D. Mich. 2004);  <u>Woods v. Southern Co.</u>, 396 F. Supp. 2d 1351, 1361-62 (N.D. Ga. 2005)(rejecting argument that a participant cannot be said to seek redress for losses to the plan unless every participant in the Plan was affected by the challenged breach of fiduciary duty).

§ 1109(a)) by including EDS stock as a plan option, regardless of whether or not individuals like plaintiff Mizell "traded [his] way to profit," as the majority states, by continuing to invest in allegedly imprudent employer securities. See In re Enron Corp. Sec. Derivative Sec. & "ERISA" Litig., No. MDL 1446, Civ. A. H-01-3913, 2006 WL 1662596, *3-4 (S.D. Tex. June 7, 2006); DiFelice v. U.S. Airways, Inc., 235 F.R.D. 70, 78-79, 83 (E.D. Va. March 22, 2006). We have already implicitly ruled against the defendants' argument — and the majority's position — on this front in affirming the class in the parallel EDS securities fraud suit. See Feder v. Electronic Data Systems Corp., 429 F.3d 125, 138 (5th Cir. 2005) ("We reject the argument that a proposed class representative in a fraud-on-the-market securities suit is as a matter of law categorically precluded from meeting the requirements of Rule 23(a) simply because of a post-disclosure purchase of the defendant company's stock.").

Finally, our disposition of this appeal is not affected by the fact that some participants may not agree with the request for injunctive relief in the form of removing the EDS stock fund as a plan option. While prudence will be evaluated as of the time of the alleged fiduciary breach, the value of

51

injunctive relief will be measured as of the current status quo.  That some class members may not want EDS stock removed as an investment alternative does not present a conflict.  Rather, the district court will decide what is best for the plan and, accordingly, will weigh the fact that members continue to invest in and hold the company stock in that determination.

For all of these reasons, I do not see either intra-class conflicts or lack of typicality on the part of the named plaintiffs that would preclude class certification under the prerequisites of Rule 23(a).

C.    The District Court's Certification and Rule 23(b).

The majority's primary focus on class action Rule 23(b)(2) is misplaced because certification was also ordered under Rule 23(b)(1), and that rule is particularly suited to this litigation.  Rule 23(b)(1) provides that:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1)     the prosecution of separate actions by or against individual members of the class would create a risk of

    (A)     inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

    (B)     adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

FED. R. CIV. P. 23(b)(1).

Although ERISA's civil enforcement rules allow a single plaintiff to sue for plan-wide relief, much of today's ERISA litigation is maintained on a class action basis. The

fiduciary duty of prudence at issue is owed to the entire class and separate actions would create the risk of establishing inconsistent standards under ERISA. Were the individual class members each left to bring separate § 502(a)(2) actions on behalf of the plan, each case could conceivably result in different courts reaching conflicting decisions regarding not only the ultimate prudence of investment in EDS stock, but also the applicability of the various defenses the defendants seek to interpose. See In re CMS Energy ERISA Litig., 225 F.R.D. at 543 (certifying class under Rule 23(b)(1) in face of allegations similar to this case to avoid risk of inconsistent rulings concerning fiduciary status and materiality of alleged omissions where the "single overriding common issue is whether CMS stock was an imprudent investment for the Plan"). Contradictory rulings as to the appropriateness of injunctive relief would also place imcompatible demands on the defendants.[8] In keeping with this rationale, a number of

---

[8] The risk of inconsistency encompasses but is not, as the majority implies, limited to injunctive considerations. Further, I do not acknowledge, as the majority states, that injunctive relief is not at issue here, only that the appropriateness of such relief will be determined (1) as to the good of the plan (rather than the individuals), and (2) at a different point than that fixed for determination of monetary damages.

courts have certified ERISA fiduciary breach suits under Rule 23(b)(1).[9]  I would follow this lead and affirm the district court's certification order under Rule 23(b)(1).

The parties have devoted much of their extensive briefing to discussion bearing on the merits of plaintiffs' claims. While plaintiffs may face factual obstacles on the way to

---

[9]     See, e.g., In re Tyco Int'l, Ltd., No. MD-02-1335-PB, 2006 WL 2349338, *7-8 (D. New Hampshire, Aug. 15, 2006) (certifying class suing on behalf of plan under Rule 23(b)(1)(B)); In re Enron Corp. Sec. Derivative Sec. & "ERISA" Litig., No. MDL 1446, Civ. A. H-01-3913, 2006 WL 1662596, *13-15 (S.D. Tex. June 7, 2006) (certifying a class suing on behalf of a plan under Rule 23(b)(1), finding both subsections (A) and (B) applicable); Rogers v. Baxter Int'l, Inc., No. 04 C 6476, 2006 WL 794734, *11 (N.D. Ill. Mar. 22, 2006) (same); Summers v. UAL Corp. ESOP Comm., 2005 WL 1323262 (N.D. Ill. Feb. 17, 2005); In re Williams Companies ERISA Litig., 231 F.R.D. 416, 424-25 (N.D. Okla. 2005) (same); In re ADC Telecommunications ERISA Litig., No. Civ. 03-2989ADMFLN, 2005 WL 2250782, *4-5 (D. Minn. Sept. 15, 2005) (same); Baker v. Comprehensive Employee Solutions, 227 F.R.D. 354, 360 (D. Utah 2005); Rankin v. Rots, 220 F.R.D. 511 (E.D. Mich. 2004); In re Worldcom, Inc. ERISA Litig., WL 2211664 *3 (S.D.N.Y. Oct. 4, 2004) ("[C]ertification is appropriate under Rule 23(b)(1)(B). Any adjudication with respect to individual members of the class will as a practical matter be dispositive of the interests of the other members of the class."); In re Ikon Office Solutions, 191 F.R.D. 457, 464 (E.D. Pa. 2000); Bunnion v. Consol. Rail Corp., 1998 WL 372644 (E.D. Pa. 1998); Gruby v. Brady, 838 F. Supp. 820, 828 (S.D. N.Y. 1993); Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co., 140 F.R.D. 474, 479 (S.D. Ga. 1991)("Because individuals may bring class actions to remedy breaches of fiduciary duty only on behalf of the plan, rather than themselves, the court cannot allow absent participants or beneficiaries to opt out of this class.  The right to recovery, after all, belongs to the plan.")(citation omitted).

proving their claim, such matters are not before us at this stage. For example, the fact that, as the majority opinion observes, EDS stock has recovered in large measure is not relevant. We have recognized that prudence is a test which measures the fiduciary's conduct at the time of the decision, rather than the success or failure of his or her course of action. <u>Metzler v. Graham</u>, 112 F.3d 207, 209 (5th Cir. 1997) ("Prudence is to be evaluated at the time of the investment without benefit of hindsight."). Class certification is appropriate regardless of the ultimate outcome on the merits because the Rule 23 prerequisites have been met as the district court correctly determined.

It appears to me that the majority's view of the effects of section 404(c) and the general releases, and how they affect all aspects of the class action certification, controls the matter, and I have difficulty seeing how it leaves the district court any room for certification on remand. In addition to prolonging an already over-lengthy process, the majority's disposition presents the district court with a futile exercise.